ALBERT H. HILL *et al. vs.* ANNA ALDRICH *et al.*

Argued Jan. 13, 1892. Decided Jan. 18, 1892.

**Mechanic's Lien Subject to Vendor's Mortgage.**—The owner of a lot sold it "on time," with the understanding that the vendee should build a house upon it, the vendor to lend or advance her $1,000 to be used for that purpose, both the purchase money and the $1,000 to be secured by mortgage on the lot. In accordance with this agreement, the vendor conveyed the lot, and the vendee executed to him a mortgage to secure both the purchase money and the sum to be advanced. Both the deed and the mortgage were recorded before anything had been done towards the construction of the contemplated building. There was no evidence that the arrangement between the vendor and vendee was colorable, or entered into with any intent to defraud. The vendor, during the progress of the erection of the house by the vendee, advanced to her the $1,000, according to the agreement, which was all applied in the payment of labor and material for the building. *Held,* that the vendor's mortgage was *bona fide,* and prior to any lien on the premises for material furnished to the vendee for the construction of the building.

Appeal by plaintiffs from an order of the district court of Hennepin county, *Hooker,* J., made August 31, 1891, granting a new trial.

This action was brought to foreclose a lien for $613.79 due plaintiffs for lumber sold and delivered by them to defendant Anna Aldrich between July 29 and September 16, 1890, and used by her in building a house on a lot in Highland Park addition, Minneapolis.

The other lien claimants were all made defendants, and proved their claims.    The action was tried May 27, 1891.    Findings were filed July 28, 1891, directing judgment against Mrs. Aldrich for each of the several liens proved, and making them all superior to the mortgage given by her and her husband to defendant William W. Huntington, mentioned in the opinion.    Huntington moved for a new trial, claiming his mortgage should be adjudged the prior lien. The district court granted the new trial, and the plaintiffs appealed.

*Wadsworth & Wadsworth* and *F. B. Lathrop*, for appellants.

Appellants have a lien for material furnished, and respondents hold a mortgage on the property in dispute.    The sole question is as to priority of the one over the other.

The court decreed the lien prior to the mortgage.    Then a new trial was ordered on the ground that the decree had been based upon the ruling in *Hill* v. *Gill*, 40 Minn. 441, and on the ground that the principle established in that case now applied only where the interest of the vendee has been forfeited.

The statute has not been changed in this particular.    Section one (1) of the new law is simply a re-enactment of sections one (1) and two (2) of the old law.    The most minute comparison discloses no difference, except that the new law expresses the same thing in better and more concise language.    Laws 1889, ch. 200, § 1; 1878 G. S. ch. 90, §§ 1, 2.    The rule in the *Gill Case* is still the law.

There is no difference between this transaction and a contract of sale conditioned on the erection of a building, except that in the latter the legal title is not formally transferred until the house is built. That is a difference in form only, and not in substance.    In both cases the vendor holds nothing but a lien for his purchase money, and the vendee has the actual title and the right of possession, until condition broken.

If the rule in the *Gill Case* does not apply, plaintiffs are entitled to a lien under section five, (5.)    Respondent is not a prior mortgagee in good faith, within the intent of that section:

(1) Because his mortgage was worth much less than its face when it was recorded, and when plaintiffs' first material was furnished.

(2) Because it was given solely in consideration of an agreement that value should be imparted to it by the erection of the building.

(3) Because the contract to build and the deed and mortgage constituted one transaction. The contract to build was the essence of it.

(4) Because this transaction was plainly a makeshift to escape the liability imposed upon the vendor in a contract of sale conditioned on the erection of a building, but practically amounted to such a contract, and nothing more.

(5) Because Aldrich was not a *bona fide* purchaser for value, the deed was not a transfer or conveyance, and the transaction was not a sale, but only a partnership arrangement with intent to profit by the erection of a building.

*Wilkinson & Traxler,* for respondent Huntington.

(1) It is not found nor pleaded that this transaction was intended by either party to mislead or overreach anybody, nor that it has had any such effect.

(2) It is not found nor pleaded that it was a "partnership agreement," nor anything akin to it.

(3) It is not found nor pleaded that there was any understanding that the premises should be reconveyed to Huntington after the house was built, nor that Mrs. Aldrich should in any way forfeit the title which she had acquired.

(4) It is not found nor alleged that there was any secret or corrupt purpose whatever in the mind of either of the parties.

(5) It is not found nor pleaded that appellants, when they furnished their material, were ignorant of the mortgage, or of the consideration therefor, nor that they expected for any reason to be preferred thereto.

Appellants claim that Huntington is not a *bona fide* prior mortgagee. The mortgage is certainly "prior." It is not urged that the significance of that word has been lost or obscured because of its use in a lien law. But it seems to be thought that the term "*bona fide*" as used in this section, (5,) means something else. Just what

it is supposed to mean does not appear, but clearly not "in good faith."

There is nothing mysterious about this use of the two qualifying terms "prior" and "*bona fide.*" It was not intended, of course, to except subsequent incumbrances; hence the propriety of the word "prior." Nor was it intended to except fraudulent or spurious mortgages, as might have been claimed if the term "*bona fide*" had been omitted. There is no ground whatever for imputing to the phrase any other than its ordinary and established meaning. *Moroney's Appeal,* 24 Pa. St. 372.

But is the mortgage *mala fides,* because given in part for future advances? The question is fully answered in the negative by the decisions of this court. *Madigan* v. *Mead,* 31 Minn. 94; *Berry* v. *O'Connor,* 33 Minn. 29.

It is not at all necessary in affirming this order to encourage anybody to suppose that a mere colorable mortgage can by any means be used as an instrument of fraud. Even if it were, the mischief would be far less than to upset all business principles and all sound philosophy, in order that heedlessness may triumph over caution.

MITCHELL, J. The facts, as found by the court, and supported by the uncontradicted evidence, are that defendant Huntington sold "on time" the lot in question to the defendant Anna Aldrich for $2,000, upon an understanding and agreement that she should proceed and erect a house upon the premises, he to lend her $1,000 for that purpose, and she to execute a mortgage on the lot for the $3,000. In accordance with this arrangement he executed a conveyance to her, and she executed back to him a mortgage for $3,000, both of which were recorded July 14, 1890, before any work had been commenced or any materials furnished for the contemplated building. Subsequently Mrs. Aldrich proceeded and built the house, for which purpose plaintiffs furnished her the material for which they now claim a lien on the premises. The first material was furnished July 29th. Huntington advanced the $1,000, as he was obligated to do, all of which was applied in paying for labor and material, and was paid out by him on Mrs. Aldrich's orders during the progress of the work.

Plaintiffs' claim is that their lien takes precedence of Huntington's mortgage. At first this claim was made, in part at least, under the provisions of section four (4) of the lien law of 1889, (Laws 1889, ch. 200,) under the rule of *Hill* v. *Gill,* 40 Minn. 441, (42 N. W. Rep. 294,) but it is very evident, especially in view of the recent decision in *Nolander* v. *Burns, ante,* p. 13, (50 N. W. Rep. 1016,) that the provisions of that section have no application; and we understand that this is now virtually conceded. Counsel now rest their right to priority upon the provisions of section five (5) of the act, on the ground that Huntington is not a *"bona fide* prior mortgagee." His language is: "We stand upon the ground that this mortgage is not prior, and in good faith." That the mortgage is "prior" cannot be questioned. We are unable to fully understand the logic of counsel's argument that it is not *bona fide.* It is not pleaded nor found that the transaction between Huntington and Mrs. Aldrich was intended to mislead or defraud anybody, or that the plaintiffs have been in any way misled by it, or that there was any understanding between Huntington and Mrs. Aldrich that the premises should be reconveyed after the house was erected, or that there was any secret or corrupt purpose in their minds. There is no ground for imputing to the phrase *"bona fide,"* as used in this statute, any other than its usual and established meaning. Huntington certainly paid a full and valuable consideration for the mortgage. The arrangement between him and Mrs. Aldrich was one they had a right to make, and which violated no rule of law or good morals. Mrs. Aldrich had a right to buy a lot on time, and borrow money with which to improve it, and Huntington had an equal right to sell the lot on time, and also lend the purchaser the money with which to improve it. That the building would enhance the value of the mortgage security, and that this fact was the inducement for Huntington's selling on time and lending part of the money with which to construct the building, certainly cannot affect the good faith of the transaction, as no one could have been misled or deceived by it. The deed and mortgage were both on record, and, had plaintiffs examined the records before furnishing the material, they would have disclosed the exact amount of incumbrance on the property. If they trusted Mrs. Aldrich with-

out examining the records, it was their own negligence, for the conse-
quences of which the law furnishes no relief. If they did examine,
then they found Huntington's lien for $3,000 on the property; and,.
if they then made no inquiry of Huntington, they trusted Mrs. Al-
drich with an apparent lien of $3,000 ahead of them; and, if they
did inquire of him, then they learned that Mrs. Aldrich had $1,000,.
and no more, in his hands, to use in building the house. In any
view of the case, they could not have been misled, and have no show
of equity to demand that their lien shall be preferred.

Order affirmed.

GILFILLAN, C. J., took no part.

(Opinion published 50 N. W. Rep. 1020.)