BARTLETT & NORTON v. W. W. BILGER; PHILADELPHIA MORTGAGE & TRUST COMPANY *et al.*, Appellees; ALLIANCE TRUST COMPANY, Intervener, Appellant.

**Mechanics' Lien: Several Buildings.** There can be no lien established, against an incumbrancer, for a general balance due for material furnished for several buildings on different lots and owned by different persons. It is not material that the owner of one of the buildings was the agent of each of the other owners.

**MORTGAGE: PRIORITY.** A mortgage recorded before an improvement is begun, has priority over a mechanic's lien sought to be charged upon the property.

**Execution Purchaser: NEW TRIAL.** A sale was decreed and had in a proceeding of which one party in interest had no notice. After decree, said party was served with notice by publication and made default; and the default later set aside. *Held,* one who bought at said sale is affected by the result of said new trial, notwithstanding Code, 2878.

*Appeal from Pottawattamie District Court.*—HON.
WALTER I. SMITH, Judge.

MONDAY, DECEMBER 17, 1894.

*Flickinger Bros.* for appellant.

*Harl & McCabe* for appellees.

KINNE, J.—The facts in this case are numerous
and complicated. We shall state, briefly as may be,
the facts as we find them admitted in the pleadings
or established by the evidence: April 5, 1889, plain-
tiffs entered into an oral contract with defendant W.
W. Bilger, who was alleged to be the "owner or agent"
of four different parties who held the separate title to
distinct lots in the city of Council Bluffs, Iowa, to fur-
nish labor and material for the erection of buildings up-
on each of said lots. That certain labor and material was
furnished under this contract, and that a balance was
due plaintiffs of six hundred and forty-five dollars and
seventy-four cents, for which they claimed a lien on
the buildings and lots. The lien was claimed jointly
on all the buildings and lots. There was no evidence
as to what particular materials were furnished for or
used in the construction of any one of the buildings.
To the plaintiffs' action to foreclose the lien, all the lot
owners made answer, denying plaintiffs' right to a lien
and all their claims, pleading a misjoinder of parties
defendant, and contesting the validity of the lien
because it was filed against all of the lots. A trial was
had on May 2, 1891, and a judgment entered against
Bilger for the amount claimed, and a decree entered
foreclosing the lien as to all of the lots, as against all
of the defendants except the Philadelphia Mortgage &
Trust Company, which had not then been served with
notice, and as to them, the cause was continued for ser-

vice. At the next term of the court, service by publication having been made in the meantime on the Philadelphia company, they made default, and a decree was entered against them on September 8, 1891. October 21, 1891, the Philadelphia company appeared, and had the default set aside, and filed an answer denying all of the allegations of the petition, questioning plaintiffs' right to a lien, averring that said different lot owners for whom plaintiffs claimed Bilger was acting as agent were all the time the owners of said lots, denying that the materials were furnished for said buildings, and setting up certain mortgages which had been severally executed by the lot owners to them, and which were filed prior to the time that any work was done on the buildings, and that they held the said mortgages, and claiming that they were liens superior to plaintiffs' claim. The Alliance Trust Company intervened, and alleged that under the decree of May 2, 1891, a special execution had issued, and all of the property been sold to plaintiffs, and that they had, on September 21, purchased of plaintiffs the certificate of sale, in good faith and for a valuable consideration and without notice. The Philadelphia company filed its answer to the petition of intervention, admitting that, since the commencement of the suit, decree had been taken against some of the defendants, and the property sold thereunder, and denying all other allegations of the petition of intervention; also, averring that said sale, as to it, was null and void. The cause was tried to the court, and it appearing that some of the mortgages originally given the Philadelphia company had been assigned to other parties, and all of the holders of the mortgages having brought suits for the foreclosure of their mortgages, wherein the Alliance Trust Company had been made defendant, and wherein the same issues, in substance, were presented, they were, by consent of parties, submitted with this case, to be all

determined together; and the court entered a decree adjudging the liens of the mortgage of the Philadelphia company to be superior to that of the Alliance Trust Company, and finding that the mechanics' lien and sale thereunder were void as against the Philadelphia company. As to the actions to foreclose the mortgages against the Alliance Trust Company, the court entered decrees against it in all of the cases, and ordered a receiver appointed, and rendered a judgment against the Alliance Trust Company for costs. To all of said judgments and findings the Alliance Trust Company excepted. It is proper to add that all of the mortgages sought to be foreclosed contained the following stipulation: "And it is further agreed and stipulated that in the event of any default or failure on the part of the mortgagors to comply fully with the terms and conditions hereof, or in case of any misrepresentation herein, the proper court or judge may, on proper application, appoint a receiver to take possession, control, and care of said premises, and collect the rents, issues, and profits thereof, and apply the net proceeds of the same, after paying all the expenses in relation thereto, to the payment of the debts secured hereby; and such proceedings shall in no manner prevent or retard the collection of said debt by foreclosure or otherwise." They also provided that failure to pay interest, or any part of principal, as same became due, or permitting taxes to become delinquent or the property to be sold for taxes, should cause the entire sum secured by mortgage to become due.

I. From the foregoing statement it will appear that the following questions are presented for our determination: *First.* Was the mechanics' lien of plaintiffs a valid and subsisting lien against the property therein described? *Second.* Was such lien paramount and superior to the mortgages which had been executed to the Philadelphia Mortgage & Trust Company?

*Third.* Did the Alliance Trust Company, by its purchase of the certificate of sale, acquire any rights as a *bona fide* purchaser, under the statute, as against the Philadelphia company? *Fourth.* Was the appointment of a receiver justified as against the Alliance Trust Company? We address ourselves first to the question as to the validity of the mechanics' lien. We think the lien was properly held void as against the Philadelphia company. The lien itself showed that the contract purported to be made with Bilger as "owner or agent," and was claimed upon buildings and lots for "which the said W. W. Bilger is now the owner or agent of the owner," and set out four separate and distinct lots, the legal title to which was in each owner individually; in other words, it was a blanket lien upon each lot for material furnished for all of the improvements upon the several lots. None of the lots were adjoining, no two of them were in the same block, but all of them were separated by streets and alleys. It is claimed that three of the lot owners, who held the legal title to their lots, were in fact mere trustees for W. W. Bilger, who was the real owner. This fact was sought to be established by parol evidence, against the objection of the Philadelphia company. We do not deem it necessary to determine the question as to the admissibility of this evidence, as it appears that no such state of facts existed as to one of the lot owners, Youlen. He held full title to his lot, and Bilger had no interest therein. He owned the lot when the contract was made, as well as when the material was furnished thereunder, and the transactions were had out of which plaintiffs' claim for a lien arose. We then have the case of a lien for the entire balance due upon the contract for the material furnished for the erection of these several houses, the title to one of which was in Youlen, and the title to the others in Bilger. How much of the material went into Youlen's

house on his lot, and how much went into the other houses on other lots which Bilger claimed as his own, is not shown; so that, so far as it appears, if the lien be established, Youlen's lot and building may be charged with a lien for material which never entered into it, or the other properties, on other lots, owned by another person, may have a lien established against them for material which went into Youlen's improvements, and as to which they had no interest and derived no benefit.   If it be conceded that Bilger was a contractor or agent for Youlen, then his contract for material for an improvement thereon would entitle the person furnishing such labor or material to a lien upon the property therefor, and which went upon or was used in said building.   But a contract made by Bilger, as agent for Youlen, for labor or material which went into Bilger's houses, or the houses of other persons for whom Bilger was acting, would not entitle those furnishing material to a lien as against Youlen's property, nor would the other property be liable for labor and material which went into improvements upon Youlen's property.   See *Cahill v. Capen,* 147 Mass. 493, 18 N. E. Rep. 419.  It was held in *Lumber Co. v. Newton,* 72 Iowa, 90, 33 N. W. Rep. 377, in a case where plaintiff had furnished material to the defendant to be used in the erection of buildings upon separate lots both owned by the same party, that it was not necessary that the material man should show how much of the material was used in each building, and that a lien might be established upon more than one building under one contract; that if, in such a case, it was material to show how much of the material was used in one building, and how much in another, the owner or subsequent lienholders could establish such facts.   In *Roose v. Commission Co.,* 74 Iowa, 51, 36 N. W. Rep. 885, it was sought to establish a lien upon several corncribs located

in different towns. Defendants purchased the cribs within twenty days after the last item of materials was furnished. It was held that if any of the cribs were complete, and none of the materials furnished within ninety days of defendants' purchase went into them, they took them discharged of the lien; that the burden was on plaintiff to show what cribs the materials went into; and that, as against a purchaser of the property, they were not entitled to a foreclosure of a lien upon any of the cribs without proof that said materials went into them. In *Williams v. Judd-Wells Company*, 91 Iowa, 378, 59 N. W. Rep. 271, it was held that where one, under a single contract, furnished labor and material for several houses on different lots jointly owned by the same person, he could file a general lien for all the work and material against all of the houses and lots, and might prove the amount which entered into each building, and obtain separate liens. In *Lewis v. Saylors*, 73 Iowa, 504, 35 N. W. Rep. 601, it was held that, when lumber had been furnished to a party for two buildings, a mechanic's lien therefor might be established against one of them without showing that the particular materials for which the suit was brought went into the particular building on which the lien was sought to be established.

In none of these cases was the lien sought to be established upon separate properties, the title to which was in different persons. In this case it does not appear that any of the materials furnished went into any particular building, and indeed it is not clear that any of the materials were used in any of the buildings on which the lien is claimed, though it does appear that they were furnished for use in said buildings. Many cases may be found, in this and other states, where a lien has been sustained as against separate properties owned by the same person, and where the

contract for furnishing the materials was to embrace all of the buildings upon said lots. As to cases like that at bar, the decisions are not in harmony. We are not inclined to extend the rule heretofore adopted in this court. We do not think that, as against an incumbrancer, a mechanic's lien claimed upon several distinct properties, upon separate lots, and which are owned severally, should be established under such circumstances as are disclosed in this record. See *Eisenbeis v. Wakeman*, 28 Pac. Rep. (Wash.) 923. In view of what is hereafter said upon another branch of the case, we need not discuss this question further.

II. From what has already been said it appears that plaintiffs had no lien upon the property covered by mortgages; but, even if they had, they could not assert it as against the Philadelphia company, or its assignees. The evidence very satisfactorily shows that the mortgages in controversy, and which were originally given to the Philadelphia company, were given and filed for record prior to the time of the beginning of the improvements upon the property sought to be charged with the lien. The mortgagees loaned their money for the express purpose of aiding in erecting these improvements. It appears to have been largely, at least, if not wholly, devoted to that use. When plaintiffs began to furnish materials under their contract, they had record notice of the liens of these mortgages. They were not deceived. Such being the case, both plaintiffs and their assignee, the Alliance Trust Company, are concluded from claiming a lien paramount to the lien of the mortgages. *Kiene v. Hodge*, 90 Iowa, 212, 57 N. W. Rep. 717.

III. The Alliance Trust Company claims protection under the provisions of section 2878 of the Code. It provides: "The title of a purchaser in good faith to

any property sold under attachment or judgment, shall not be affected by the new trial permitted by the preceding section except the title of property obtained by the plaintiff and not bought of him in good faith by others." It will be remembered that May, 1891, the plaintiffs recovered judgment against Bilger, and a decree foreclosing their lien against all of the defendants except the Philadelphia company, which had not then been served with notice. Without waiting to serve the Philadelphia company, plaintiffs caused an execution to issue, and sold the property upon said judgment. Thereafter notice by publication was served upon the Philadelphia company, and its default was taken, and a decree entered against it, and after that the Alliance Trust Company made its purchase of the certificate of sale of plaintiffs. Afterward, and in accordance with the statute, the Philadelphia company appeared, and had the default set aside, and filed its answer. There was no sale after the decree was entered against the Philadelphia company. No rights that they might have could thus be cut off by a sale made on a judgment and decree entered prior to the time they had been served with notice of the suit to which they had been made parties. The statute has no application to a case where a sale is made prior to the time the party it is sought to thus conclude was served with notice in the case. Nor is there any equity in the claim of the Alliance Trust Company in this respect. It knew, or should have known, when it made its purchase, that at the time of sale no notice had been served upon the Philadelphia company, and hence, as to the latter company, the sale was without effect.

IV. As to the propriety of the appointment of the receiver, little need be said. As the Alliance Trust company, as assignee of plaintiffs of the certificate of purchase, acquired no rights as against the Philadelphia

company, for reasons heretofore stated, it has no such standing in court as to entitle it to question the propriety of the action of the court in appointing a receiver. AFFIRMED.