[No. 2928. Decided March 24, 1899.]

HOME SAVINGS AND LOAN ASSOCIATION, *Appellant,* v. ALFRED F. BURTON *et al., Respondents.*

APPEAL—SERVICE OF NOTICE—PARTIES—SERVICE OF BOND—EXCEPTIONS TO FINDINGS—MOTION TO STRIKE—SETTLEMENT OF STATEMENT—NOTICE TO RESPONDENTS—MORTGAGE FOR FUTURE ADVANCES—MECHANICS' LIENS—PRIORITIES.

Under Bal. Code, § 6518, providing that no appeal shall be dismissed for any defect in the service of notice of appeal, if it appears that the adverse party had sufficient notice so as not to

prejudice his substantial rights, the giving of notice to an attorney for a respondent is sufficient to excuse the omission of notice to him as attorney for himself, as he cannot in the latter capacity maintain that he has had no notice.

Service of notice of appeal upon parties who have not appeared in the action is unnecessary.

Failure to serve respondents with an appeal bond or notice of its filing is not ground for dismissal of the appeal, under the provisions of the appeal act of 1893.

The supreme court will not entertain a motion to strike exceptions to findings of fact and conclusions of law, on the ground that they were not taken within the time prescribed by law.

Notice to respondents of the settlement of a statement of facts is unnecessary, where no objections to the proposed statement have been filed, nor substantial amendments proposed.

A mortgage to secure future advances is entitled to priority over the liens of mechanics and material men, if recorded prior to the performance of service or furnishing of materials, even if a portion of the advances are not made until after the mechanics' liens have attached, under Gen. Stat., § 1666, according mechanics' liens preference to any lien or mortgage which may have attached subsequently to the time when the building was commenced, work done or materials furnished, or which was unrecorded at that time, or of which the lien-holder had no notice, at the commencement of furnishing services or material.

Material men and laborers can claim liens only from the time they commence to furnish materials or perform labor, and they cannot be subrogated to the rights of the contractors, in order to have their claims date back to the time the latter commenced work on the building.

Appeal from Superior Court, Whitman County.—Hon. WILLIAM McDONALD, Judge. Reversed.

*Samuel R. Stern,* for appellant.

*Fullerton & Ettinger, Chadwick & Bryant, Trimble & Pattison, A. E. Isham,* and *F. M. Ellsworth,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—Several of the respondents have moved to dismiss this appeal on the alleged grounds, (1) that the

record does not show that the notice of appeal was served upon F. M. Ellsworth, administrator of the estate of Florence Burton, deceased, and (2) that no service of the appeal bond or notice of the filing thereof has ever been served upon any of the respondents.

As to the first ground of the motion, the record discloses that F. M. Ellsworth appeared in the court below as the attorney for the Colfax Lumber Company, and also as attorney for himself as administrator of the estate of Florence Burton. The notice of appeal was directed to all the defendants in the action, and service of the same was admitted by said Ellsworth as attorney for the Colfax Lumber Company. There is no affidavit or return of the sheriff in the record showing service upon him as attorney for himself, but it does not follow that the appeal must necessarily be dismissed on that account. It is true that the statute relating to appeals to the supreme court provides that, if the appeal be not taken at the time when the judgment or order appealed from is rendered or made, then the party desiring to appeal may,· by himself or his attorney, within the time prescribed in § 4 (Bal. Code, § 6503) of the act, serve written notice on the prevailing party or his attorney that he appeals from such judgment or order to the supreme court, and within five days after the service of such notice he shall file with the clerk of the superior court the original or a copy of such notice, with proof or the written admission of the service thereof, and thereupon the clerk shall enter such notice, with the proof or admission of service thereof, in the journal of the court. But the same act also provides that no appeal shall be dismissed for any informality or defect in the notice of appeal or the service thereof, if from the notice, or other parts of the record on appeal, it appears that the adverse party has had sufficient notice of the appeal, describing the judgment or order appealed from with such certainty,

that his substantial rights would not be prejudiced by the hearing of the appeal. Laws 1893, pp. 129, 130 (Bal. Code, § 6518). Now, we are utterly unable to understand by what process of reasoning Mr. Ellsworth, after having accepted service of this notice of appeal as attorney for the Colfax Lumber Company, can now successfully maintain, as attorney for himself as administrator, that he has had no notice of the appeal. In *Howard v. Shaw,* 10 Wash. 151 (38 Pac. 746), this court held that, where a lawyer appeared for himself and as attorney for his wife, service of notice of appeal on him, directed to both, was good service as to the wife; and the same principle is applicable here. See, also, *Hendricks v. Edmiston,* 15 Wash. 687 (47 Pac. 29).

It is also claimed that there is no proof of service of the notice of appeal on the minor children of Mrs. Burton, or on Warren Philbrick, their guardian *ad litem;* but it is a sufficient answer to this objection to observe that it does not appear that they, or either of them, either demurred or answered or gave any written notice of appearance in the action, and, under such circumstances, no service upon them was necessary.

As to the second ground, we find no provision in the statute for the dismissal of an appeal for want of service of the appeal bond on the adverse parties. The statute does provide, however, that any respondent may except to the sufficiency of the surety or sureties in an appeal bond within ten days after the service on him of the notice of appeal, or within five days after the service on him of the bond or written notice of the filing thereof; but the most that can be claimed for this provision is that it permits the respondent to except to the sufficiency of the sureties in the bond after the expiration of the time elsewhere prescribed by the statute. The law provides, and every respondent must take notice, that an appeal in this state

becomes ineffectual for any purpose unless a proper appeal bond is filed within five days after the giving or serving of the notice of appeal; and there is, therefore, no apparent reason for dismissing an appeal for want of service of the bond, and no provision has, as we have stated, been made for such dismissal. It is also claimed that the bond in this instance is not such as is required by law, and is insufficient both in form and substance; but it is not attempted to be shown wherein it is insufficient, and we have failed, on inspection, to discover that it is insufficient.

The respondents also moved the court to strike the exceptions to the findings of fact and conclusions of law as made by the court, for the alleged reason that said exceptions were not taken within the time prescribed by law. With regard to this motion, it is proper to say that it is one not contemplated by the statute, and not sanctioned by the practice of this court. If exceptions, in any particular case, are not taken within the prescribed time, they will not be considered, if objected to, by this court, and a motion to strike is therefore entirely unnecessary.

It is also claimed that the exceptions to the findings of the court were not taken within the time prescribed by the statute. It appears that a copy of the findings of fact and conclusions of law was served on counsel for appellant by mail, and there is some controversy as to whether the exceptions thereto were in fact taken in time. But whether or not they were actually filed within the time limited is immaterial in this instance, for the record discloses that proper and timely exceptions were taken to the findings proposed by appellant and refused by the court. These respondents further move the court to strike out the statement of facts on the grounds that the same was not properly certified by the judge before whom the cause was tried, and that no notice was given of the settle-

ment of the proposed statement to the moving respond-
ents. We perceive no merit in this motion. The certifi-
cate of the trial judge seems to be substantially in accord-
ance with the statute; and inasmuch as no objections
were filed, or substantial amendments proposed, to the
statement of facts by these, or any other, respondents, no
notice to them of the settlement of the statement was re-
quired under the statute. All of the foregoing motions
are denied.

During the summer of 1892 the respondent, Alfred F.
Burton, and his then wife, Florence Burton, conceived
the scheme of erecting a three story hotel building in the
city of Colfax, in this state; and for the purpose of ob-
taining, in part, the funds therefor, they solicited and
received a subscription from the citizens of that place of
$9,000. Having selected and made arrangements to pur-
chase a site for such building, they employed one John
K. Dow, an architect, to prepare plans and specifications
for the same, and to estimate the cost thereof. There-
after they applied to the Home Savings & Loan Associa-
tion for a loan of $16,000, to be used in the construction
of the building. This association loaned money to its own
members only, and, for the purpose of obtaining the loan
desired, the Burtons subscribed for 160 shares of its cap-
ital stock. The association thereupon agreed to make the
loan on condition that the Burtons should execute a mort-
gage as security therefor, upon the lot selected as the hotel
site, and upon which the building was to be thereafter
erected. Although it was agreed between the parties that
the mortgage should be given for the sum of $16,000, it
was understood that it should be considered and treated in
part as a mortgage for future advances. In pursuance
of the agreement, a mortgage on the property in question
was executed to the appellant association, on August 15,
1892, and the same was recorded on August 20, 1892. A

deed of the premises described in the mortgage was also made to the mortgagors on August 15th, and was placed upon record at the same time the mortgage was recorded. The appellant advanced to the mortgagor the sum of $2,000 upon the execution of the mortgage, $1,500 of which was paid to the grantors named in the deed to the Burtons. It was agreed that the balance of the $16,000 mentioned in the mortgage should be advanced from time to time during the progress of the building. Under this mutual arrangement $3,000 was advanced on October 1, 1892, $4,500 on October 31, 1892, and $3,000 on November 15, 1892. The remainder, $3,500, was not advanced by the appellant for the reason that, prior to the time it was to have been delivered, Burton abandoned the building and left the country, taking with him over $4,000, most, if not all, of which had been donated for building purposes by citizens of Colfax. After the recording of the mortgage in question, and on August 29, 1892, the respondent Burton entered into a contract with the respondents Burnham & Clapp to erect the hotel building in accordance with the plans and specifications of the architect, for the sum of $20,874, which was to be paid in installments of eighty-five per cent. of the amount of work completed on the first and fifteenth days of each month, according to estimates to be made by the architect. On or about the 1st of September, 1892, the said Burnham & Clapp commenced the erection of the building, under their contract with the owner, and continued the work until on or about December 5th following, when they ceased because of the failure of the Burtons to pay the estimate due on the 1st of December preceding. These contractors, together with the sub-contractors, material-men and laborers filed mechanic's liens upon the building and premises for the amounts due them, respectively. After the filing of these lien claims, the Home Savings

& Loan Association commenced this action to foreclose its mortgage, and made these lien claimants and others parties defendant. The complaint alleged the amount claimed to be due upon the mortgage according to its terms, and asked that the same be foreclosed and that the lien of the mortgage be adjudged paramount and superior to the liens claimed by the respective defendants. The defendants answered, setting up their liens and claiming priority over the lien of plaintiff's mortgage. The court rendered a decree establishing the several mechanics' liens and foreclosing the mortgage, but adjudged that the lien of the mortgage, except for the sum of $2,000, the amount advanced at the time of its execution, was inferior and subject to the liens of the respective defendants. From this judgment and decree the plaintiff has appealed to this court.

Although several errors are assigned by the appellant, the main question presented for our determination is whether the mortgage lien is paramount and superior to the liens of the several respondents for the whole sum due thereon, or, as the court decreed, for the first advancement only. The appellant contends that its mortgage is entitled to preference over all liens which attached subsequently to the time when it was recorded. Section 1666 of the General Statutes (1 Hill's Code) provides that,

"The liens provided for in this chapter are preferred to any lien, mortgage, or other incumbrance which may have attached subsequent to the time when the building, improvement, or structure was commenced, work done, or materials were commenced to be furnished; also to any lien, mortgage, or other incumbrance, of which the lienholder had no notice, and was unrecorded at the time the building, improvement, or structure was commenced, work done, or the materials were commenced to be furnished."

The language of this section is so clear and unequivocal that there is no necessity to resort to any rule of construc-

tion to determine its meaning. When the legislature said that the liens for which provision was made are preferred to any lien, mortgage, or other incumbrance of which the lienholder had no notice and was unrecorded, they also, in effect, said that such liens are not preferred to mortgages of which the lienholder had notice or were recorded at the time the lien arose; and such is the opinion of Mr. Jones, as expressed in his work on Liens. In discussing the question of priority of mechanics' liens, he says:

"But in some states it is expressly provided that a mortgage must be recorded before a mechanic's lien attaches in order to give it priority. Generally it may be said that it is the policy of the record system to do away with secret liens, and to require a record of every lien and conveyance, not only as against subsequent purchasers and mortgagees, but as against other lien claimants and creditors. The record of a mortgage is accordingly notice to subsequent claimants of mechanic's liens. Actual notice by a lien claimant of an unrecorded mortgage has the same effect as a prior record of the mortgage."

And in a note to the text he says, referring to our statute, among others:

"Mechanics' liens have priority of mortgages unrecorded, and of which the lienor had no notice when the lien attached." 2 Jones, Liens (2d ed.), § 1460, p. 441.

And this court has expressed the same view in *Huttig Bros. Mfg. Co. v. Denny Hotel Co.*, 6 Wash. 122 (32 Pac. 1073), in which it is said:

"Under the provisions of our statutes a material man can only claim a lien from the time he commenced to furnish materials for the building, and if such time is subsequent to the creation of the mortgage lien, of which he has had notice, his claim for materials is subject thereto."

It would seem that, under the provisions of this statute and the authorities cited, it could hardly be doubted that appellant's mortgage is prior and superior to the liens of

these respondents. But it is nevertheless claimed by the learned counsel for Carson, Davis, and Julian and George P. Howard, that a mortgage to secure future advances becomes an actual charge upon the land covered by it at the time when such advances are actually made, and then only to the amount of the advances; that, until the advances are made, neither the land described in the mortgage, the parties to it, nor third persons, are bound by it; and that the record of such mortgage can not operate as constructive notice to subsequent incumbrancers. And in support of their position counsel cite the following cases: *Ladue v. Detroit & M. R. R. Co.,* 13 Mich. 380 (87 Am. Dec. 759); *Schultze v. Houfes,* 96 Ill. 335; *Ter-Hoven v. Kerns,* 2 Barr, 96; *Bank of Montgomery County's Appeal,* 36 Pa. St. 170; *Spader v. Lawler,* 17 Ohio, 371 (49 Am. Dec. 463); *Boswell v. Goodwin,* 31 Conn. 74 (81 Am. Dec. 169).

It is urged with much earnestness that appellant's mortgage never attached, or, in other words, did not become a lien, as against these respondents, except as to the first advancement made thereunder, for the reason that work was commenced by the contractor upon the building and certain materials furnished therefor, before any of the subsequent advances were made. It must be admitted that the authorities cited afford a legitimate basis for the argument, but we are not disposed to adopt the rule contended for as the law of this state. These cases are against the great weight of authority in this country and are, in our judgment, based upon an erroneous view as to the real nature of equitable liens, and the effect of our recording acts. These very cases were reviewed and the doctrines announced by them clearly pointed out by Pomeroy in his valuable treatise on Equity Jurisprudence. Referring to them, and other cases holding the sam�) view, he says:

"They seem to regard the lien for securing future advances as only arising, or at all events as only perfected so as to be available, at and from the time when the advance is actually made. An advance, therefore, although in pursuance of a prior mortgage duly recorded, if made after the record of a subsequent mortgage or conveyance, or the docketing of a subsequent judgment, is affected with constructive notice of such subsequent encumbrance or conveyance, and its lien is consequently postponed to that of the second record. By this rule, a mortgage to secure future advances secures a preference only for those advances actually made before the record of a subsequent encumbrance or conveyance; it loses its precedence for all advances made after such record."

The learned author then expresses his own opinion in the following language:

"The fundamental error of this view, in my opinion, consists in its mistaken conception of the nature of an equitable lien, in regarding the lien as arising at and from *the act of making the advance*, instead of from the previous executory agreement by which the land was bound as security for the future advances." 3 Pomeroy, Equity Jurisprudence (2d ed.), § 1199, and note.

See, also, 1 Jones, Mortgages (5th ed.), § 372.

"Mortgages to secure future advances have always been sanctioned by the common law. . . . In this country, mortgages made in good faith for the purpose of securing future debts have generally been sustained, both in the early and in the recent cases. It does not matter that the future advances are to be made to a third person, or for his benefit at the request of the mortgagor. Neither is the validity of a mortgage to secure future advances affected by the fact that the advances are to be made in materials for building instead of money. A mortgage is not fraudulent because it is given for a larger amount than the actual loan made at the time, with a view to its covering future loans up to the amount of the mortgage." 1 Jones Morgtgages (5th ed.), § 365.

"Claimants of liens," says Mr. Phillips, "are bound to know what has been done under a duly registered mort-

gage.  Mortgages, and deeds in the nature of mortgages, to secure future loans or advances, if *bona fide,* have always been sanctioned, and, if otherwise unexceptionable, their validity cannot be questioned.  The mere fact that materials are to be supplied, instead of money, will not impair their validity, and, if given before the commencement of a building, will be good against mechanics' liens." Phillips, Mechanic's Liens (3d ed.), § 236.

This court recognized the validity of such mortgages in the case of *Huttig Bros. Mfg. Co. v. Denny Hotel Co., supra.*  There being no doubt, then, that mortgages to secure future advances are valid liens, we think that, under our statute, they are just as effectual against subsequent incumbrances as are mortgages to secure a present indebtedness.  A mortgage given in part to secure future advances was under consideration in the well-considered case of *Tapia v. Demartini,* 77 Cal. 383 (19 Pac. 641, 11 Am. St. Rep. 288), in which the court said:

"It is firmly settled by a long line of decisions that a mortgage, made in good faith to cover future advancements, is valid, not only as between the immediate parties to the instrument, but as against subsequent purchasers or encumbrancers, if properly recorded."

Many cases are cited by the court in support of its declaration, among which is *Shirras v. Caig,* 7 Cranch, 34, which is a case entitled to much weight, not only on account of the learning and ability of the court which rendered the decision, but by reason of the fact that the question was determined upon the general principles of equity, without reference to any statutory provision such as we have in this state.  The mortgage considered in this California case was, like the one under consideration here, for a specific sum, and did not disclose upon its face that it was given in part for future advancements; but the court held that it was not invalid on that account.  In the same case the court further observed:

"The mortgage, as against subsequent encumbrancers, becomes a lien for the whole sum advanced from the time of its execution, and not for each separate amount advanced from the time of such advancement, although the right to enforce the collection thereof can only arise upon each advancement being made."

We think this is the doctrine supported by the better reason and by the great weight of authority. See *Ackerman v. Hunsicker,* 85 N. Y. 43 (39 Am. Rep. 621); *Moroney's Appeal,* 24 Pa. St. 372; *Shirras v. Caig,* 7 Cranch, 34; *Tully v. Harloe,* 35 Cal. 302 (95 Am. Dec. 102).

In discussing the question of priority of mortgages such as that now under consideration, the learned court, in *Wisconsin Planing Mill Co. v. Schuda,* 72 Wis. 277 (39 N. W. 560), used this language:

"We think the learned counsel for the brewing company have fairly demonstrated, both on principle and by authority, that a mortgage executed, as was this mortgage, in entire good faith, to secure advances to be thereafter made to pay for labor performed upon the building in question, and materials furnished therefor, and which advances were so made, although after the commencement of the building, becomes a lien upon the mortgaged premises from the time of the execution and recording of such mortgage, and, if it is recorded before the commencement of the building, it will take precedence of liens for labor performed and materials used in the erection of the building."

All that is said in the foregoing quotation is strikingly applicable to the facts of this case.

In *Kiene v. Hodge,* 90 Iowa, 212 (57 N. W. 717), plaintiff furnished money to a lot owner to erect a building thereon, and took a mortgage on the lot, which, unimproved, was insufficient security for the loan, the money to be applied to the erection of the building. Defendants furnished material for the building, and the record showed

also plaintiff's lien at the time they commenced to do so, and the court remarked:

"When Hodge concluded to erect the building he applied to Kiene & Son as agents for plaintiffs, for the loan of $8,000 to erect the building, and the loan was made for that purpose, and the money paid out by Kiene & Son to the material furnishers and others as the building progressed, including the defendant companies. The lots, independent of the building, were not sufficient security for the loan, and the mortgage was taken with the understanding that the money was to be applied in increasing the value of the security by the erection of the improvement. The money was, in good faith, placed into the building, and the mortgage stands as a first lien upon the entire property. The equities are strong in favor of the plaintiffs. At the time defendants commenced to furnish the lumber for which their liens are claimed, the records indicated the lien of plaintiffs, and they engaged in the transaction in the full light of the facts."

In *Hill v. Aldrich*, 48 Minn. 73 (50 N. W. 1020), the owner of the lot sold it on time, with the understanding that the vendee should build a house upon it, the vendor to lend or advance her $1,000 to be used for that purpose, both the purchase money and the $1,000 to be secured by a mortgage on the lot. In accordance with this agreement, the vendor conveyed the lot and the vendee executed to him a mortgage to secure both the purchase money and the sum to be advanced. Both the deed and the mortgage were recorded, before anything had been done toward the construction of the contemplated building. There was no evidence that the arrangement between the vendor and the vendee was colorable or entered into with any intent to defraud. The vendor, during the progress of the erection of the house by the vendee, advanced to her the $1,000 according to the agreement, which was all applied in the payment of labor and material for the building; and the court held that the vendor's mortgage was prior to any

lien on the premises for material furnished to the vendee for the construction of the building. See, also, *Bartlett v. Bilger*, 92 Iowa, 732 (61 N. W. 233); *Choteau v. Thompson*, 2 Ohio St. 114; 15 Am. & Eng. Enc. Law, p. 88, and authorities cited.

It also seems to be contended, on behalf of certain of the respondents, that the rights of the material men and laborers should be subrogated to those of the contractors, and that their liens relate back to the time at which the contractors commenced work upon the building; but this question was settled adversely to this contention in the case of *Huttig Bros. Mfg. Co. v. Denny Hotel Co., supra,* where it was decided that each lien, under our statute, must stand upon its own footing. When these respondents commenced to work upon and to furnish material for the building, they not only had notice by the record of the appellant's mortgage, but actual notice that the money used to pay for labor and material was being advanced by appellant. They were not deceived in any way by appellant, and are not entitled to a preferential lien upon the premises for the amounts due them, respectively.

We have carefully read all of the several briefs filed in this case and examined all of the authorities cited, but, as what we have already said disposes of the cause, it is not necessary to consider other questions discussed in the briefs of counsel.

The judgment and decree is reversed, and the cause remanded to the court below with directions to enter a decree foreclosing appellant's mortgage and declaring the lien thereof, for the whole amount advanced thereunder, paramount to the claims of the several respondents, and for further proceedings in accordance with law.

REAVIS and DUNBAR, JJ., concur.