(August 14, 1905.)

# PACIFIC STATES SAVINGS, LOAN AND BUILDING COMPANY v. DUBOIS.

[83 Pac. 513.]

MECHANICS' LIENS—MORTGAGE—PRIORITIES—JUDGMENT.

1. In adjusting the rights of lienholders, under the provisions of section 5 and other sections of an act to secure liens for mechanics and others, approved February 7, 1899 (Sess. Laws 1899, p. 148), where the erection or construction of building was not let to anyone, but the owner employed men to furnish rock and do the rockwork, and employed others to furnish the brick, and others to lay them, others to furnish other materials, others to furnish and do the plumbing, and others to do the carpenter work, etc., the court, in the judgment, must declare the rank or class of liens in accordance with the provisions of section 11 (page 149) of said act, and, where a mortgage lien attached prior to the time that either or any of such lien claimants commenced work or commenced to furnish material, the lien of such mortgage is prior to the liens of the last-mentioned laborers or materialmen.

SAME.

2. The provisions of section 11 of said act (Laws 1899, p. 149) apply to cases in which there are no intervening mortgage liens, Where mortgage liens are involved in the foreclosure of mechanics' and materialmen's liens, the time or the date when the building was commenced, or the laborer began work, or the materialmen com-

menced to furnish material, must be taken into consideration in determining the priority of such liens over the mortgage liens. (Syllabus by the court—Ailshie, J., dissenting.)

APPEAL from the District Court in and for Ada County. Honorable George H. Stewart, Judge.

Action by A. J. Turley and others against J. K. Dubois. From the judgment the Pacific States Savings, Loan and Building Company appeals. Reversed.

The facts are fully stated in the opinion.

Alfred A. Fraser, for Appellant.

This question involves a construction of the statutes of Idaho relating to mechanics' liens, and the particular sections involved are found in the laws of the Fifth Session of 1899 of Idaho. In the case of *Root v. Bryant*, 57 Cal. 48, the court in the syllabi say: "Intermediate to the execution and recording of a mortgage, work was commenced upon the mortgaged premises, and a mechanic's lien claimed therefor; held, that the lien of the mortgage was superior to the mechanic's lien, unless the plaintiff, at the time he commenced the work, had no notice of the existence of the mortgage." (*McClain v. Hutton,* 131 Cal. 144, 61 Pac. 273, 63 Pac. 182.) In the case of *Home Sav. etc. Assn. v. Burton,* 20 Wash. 688, 56 Pac. 940, the supreme court of the state of Washington, in a case almost identical with the case at bar, and construing the statute of Washington, which is the same as the statute of Idaho, say, in the opinion of the court: "The appellant contends that its mortgage is entitled to preference over all liens which attached subsequent to the time when it was recorded. Section 1666 of the General Statutes (1 Hill's Code, par. 1960) provides that 'the liens provided for in this chapter are preferred to any lien, mortgage or other encumbrance which may have attached subsequent to the time when the building, improvement or structure was commenced, work done or the material was commenced to be furnished.' The language of this section is so

clear and unequivocal that there is no necessity to resort to any rule of construction to determine its meaning. When the legislature said that the liens for which provision was made are preferred to any lien, mortgage or other encumbrance of which the lienholder had no notice and was unrecorded, they also in effect said that such liens are not preferred to mortgages of which the lienholder had notice or were recorded at the time the lien arose. . . . . 'Mechanics' liens have priority unrecorded, and of which the lienor had no notice when the lien attached.' (2 Jones on Liens, 2d ed., p. 441, par. 1460.) And this court has expressed the same view in *Huttig Bros. Mfg. Co. v. Denny Hotel Co.,* 6 Wash. 122, 32 Pac. 1073, in which it is said: 'Under the provisions of our statute, a materialman can only claim a lien from the time he commenced to furnish materials for the building; and if such time is subsequent to the creation of the mortgage lien, of which he has had notice, his claim for materials is subject thereto.' It would seem that, under the provisions of this statute and the authorities cited, it could hardly be doubted that appellant's mortgage is prior and superior to the liens of these respondents.''

Quarles & Pritchard, Wyman & Wyman, Johnson & Johnson, Davidson & Stoutemeyer, Gustave Kroeger, J. T. Morgan, R. L. Blewett, Henry Z. Johnson, Neal & Kinyon, Charles F. Keelsch, Silas W. Moody, Hawley Puckett & Hawley and Hugh E. McElroy, for Respondents.

Our contention is that the construction of this section of our lien law must be, that the lien of laborers and materialmen, in all cases, attach at the commencement of the building or structure, if the work of construction has been continuous, and it makes no difference when the work is done or materials furnished, nor whether the structure is erected under an original contractor or by the owner of the premises. ''The facts disclosed by the record bring this case fully within the rule laid down by this court in the case of *Cahoon v. Levy,* 6 Cal. 295, 65 Am. Dec. 515, and on the authority of

that decision the judgment is affirmed.'' (*Brennan v. Marsh*, 10 Cal. 435.) We must construe our statute without the aid of the California decisions. In *Gardner v. Leck*, 52 Minn. 522, 54 N. W. 748, it is said: ''There is nothing novel or unjust in a law which gives priority to the liens of mechanics and materialmen over those parties originating subsequent to the commencement of the improvements on the land. In at least twenty states such laws have been enacted and again and again have been sustained by the courts.'' The construction contended for·by respondents is in harmony with the general policy of the laws of Idaho for the protection of laborers. (See sections 3350 and 3361, New Code of Civil Procedure giving liens to woodmen and farm laborers.) A mechanic's lien is superior to the lien of a mortgage as to the increased value of the property, due to the improvements made by the lienor subsequent to the mortgagee. (*Christian-Craft Grocery Co. v. Kling*, 121 Ala. 292, 25 South. 629.)

In the case of *Davis v. Bilsland*, 18 Wall. 659, 21 L. ed. 969, it is said (construing Montana statute) : ''This language is unambiguous; the liens secured to the mechanics and materialmen have precedence over all other encumbrances put upon the property after the commencement of the building. And this is just. Why should a purchaser or lender have the benefit of the labor and materials which go into the property and give it its existence and value?'' We also refer to the following authorities, decided under statutes similar to Idaho: *Kansas Mtg. Co. v. Weyerhauser*, 48 Kan. 335, 29 Pac. 153; *Hextun Steam Heater Co. v. Gordon*, 2 N. Dak. 246, 33 Am. St. Rep. 776, 50 N. W. 708; *Vilas v. Mc-Donough Mfg. Co.*, 91 Wis. 907, 51 Am. St. Rep. 925, 65 N. W. 488, 30 L. R. A. 778.

SULLIVAN, J.—This action was commenced by A. J. Turley and others to foreclose certain mechanics' and laborers' liens against the property of the respondent Dubois. The appellant corporation, among a number of others, was made a party defendant. During the progress of the case the court made an order changing the parties in said action,

so that thereafter all further proceedings in said action were entitled "Pacific States Savings, Loan & Building Company, Appellant, v. Jesse K. Dubois," and certain other parties, as defendants.  The appellant company was the owner and holder of two mortgages upon the property involved in this case—one for the sum of $20,000, which was filed for record in the proper recorder's office on the twenty-third day of January, 1904; and the other for $10,000, which was filed for record in the proper recorder's office on the eighteenth day of June, 1904, which mortgages were executed by said Dubois and his wife to the said appellant corporation to secure the payment of said sums.  The court, after hearing the evidence, held as a matter of law that the liens of all laborers, materialmen or contractors relate back to the time of the commencement of the building, irrespective of the question as to whether the work was done, the material furnished, or the contract entered into prior or subsequent to the time that the mortgages of the appellant corporation were filed for record.  From the judgment of the court declaring that said liens were prior to the mortgage liens of the appellant, this appeal was taken.

In this case the contract to erect said building was not let to anyone, but the owner employed men to furnish and do the rockwork, employed others to furnish the brick, others to furnish other material, others to furnish and do the plumbing, etc., and others to do the carpenter work, etc.  Several errors are assigned, some of which go to the sufficiency of certain of the liens filed, but the main question is whether or not the claim of liens of persons performing labor upon or furnishing materials for the construction of the building on the premises referred to in the complaint relates in each case back to the time of the commencement of said building, or whether the lien attaches in favor of such parties from the date on which the labor was commenced to be performed, or the material was commenced to be furnished.  It is conceded that if all of said liens relate back to the time of the commencement of the building, irrespective of the time when the labor was commenced to be performed or the

material was commenced to be furnished, then the judgment
should be affirmed as to that question, and if not, said judg-
ment should be reversed. That question involves a construc-
tion of the statutes of this state relating to mechanics' liens,
and particularly involves the construction of section 5 of the
mechanic's lien law, found at page 148 of the Session Laws
of 1899, which section is as follows: ''The liens provided for
in this chapter are preferred to any lien, mortgage, or other
encumbrance, which may have attached subsequent to the
time when the building, improvement or structure was com-
menced, work done, or materials were commenced to be fur-
nished; also to any lien, mortgage or other encumbrance of
which the lienholder had no notice, and was unrecorded at
the time the building, improvement or structure was com-
menced, work done, or materials were commenced to be fur-
nished.''

Counsel for respondents contend that under the provisions
of said act the lien of laborers and materialmen in all cases,
regardless of when they performed the labor or furnished
the material, attached from the time of the commencement
of the erection of the building, regardless of whether the
structure was erected under an original contractor or by the
owner of the premises; and it is conceded by counsel for ap-
pellant that if all of said liens relate back to the time of
the commencement of the building, irrespective of the time
when the labor was commenced to be performed or the ma-
terial began to be furnished, the judgment should be affirmed
on that question. It is conceded that the work done by some
of the lien claimants, and the material furnished by some
of the materialmen, was commenced to be done and fur-
nished subsequent to the recording of the mortgages above
referred to; and it is contended by appellant that under the
provisions of said section 5 above quoted all such liens are
subsequent to the mortgages. We will proceed and analyze
the first half of section 5, and divide it into sentences, which
sentences we think will clearly show the intent of the legis-
lature in enacting it: 1. ''The liens provided for in this
chapter are preferred to any liens, mortgages or other encum-

brances which may have attached subsequent to the time when the building, improvement or structure was commenced.'' This would include all liens that are entitled to date from the commencement of the construction of a building, improvement, or structure of any kind. All of said liens are referred to any mortgage given subsequent to the commencement of such building, etc.  2. ''The liens provided for in this chapter are preferred to any lien, mortgage or other encumbrance which may have attached subsequent to the time when the work was commenced to be done.''  That provision prefers all liens for work or labor, which work or labor was begun prior to the filing of a mortgage, but begun after the commencement of the erection of the building, etc., by a person or persons not theretofore connected with the construction of the building, and entitled to a separate and distinct lien from those who commenced the building.  3. ''The liens provided for in this chapter are preferred to any lien, mortgage or other encumbrance which may have attached subsequent to the time when the materials were commenced to be furnished.''  That provision prefers all liens for material, which material was commenced to be furnished prior to the recording of a mortgage, and which was commenced to be furnished some time after the commencement of the building, etc. Separating said section into distinct sentences as above, it seems clear to me that, when mortgages and other liens are involved in the foreclosure of mechanics' and materialmen's liens, the time or date when the building was commenced, or the laborer begun to work, or the materialman commenced to furnish the material, must be taken into consideration in determining the priority of such liens over such mortgage lien. All liens for labor commenced and materials commenced to be furnished prior to recording said mortgages are prior and superior liens to said mortgages, and the liens of all laborers for labor commenced, and materialmen for material commenced to be furnished, subsequent to the recording of said mortgages, are subordinate to said mortgages, when such work is done and material furnished by persons not theretofore connected with the construction of the build-

ing. If that were not intended, why did not the legislature simply say that all liens for labor and material furnished in the erection or construction or repair or change of a building took effect from the commencement of the construction of such building or of such repair or change? It is clear to me that the legislature intended to make all liens for work commenced and material commenced to be furnished after the recording of a mortgage subsequent and inferior thereto, especially when such work is done and materials furnished by persons who had no connection with the erection of the building until after the recording of the mortgages.

The mechanic's and laborer's lien law containing said section 5 was enacted in 1893, and approved February 27th of that year. (Laws 1893, p. 51.) We first find said section in the Session Laws of 1881 (Code Civ. Proc., sec. 819). That section was evidently copied from the laws of the state of California, as section 1186 of the Code of Civil Procedure of that state is identically the same. We first find it in the laws of California in 1872. The state of Washington borrowed that section from California the same as Idaho. Each section has a caption or index preceding it as enacted in our law of 1893, and those are identically the same as we find in the lien laws of Washington. This would indicate that said captions and sections were taken, many of them, literally, from the Washington law. We find a few slight changes in some of the sections, and a new section or two added not contained in the Washington law. For the Washington mechanic's lien law, see Hill's Annotated Statutes and Codes of 1891, section 1663 et seq. Section 1194 of the California law provides that in every case where different liens are asserted against the same property the court, in its judgment, must declare the rank of each lien, which shall be in the following order: 1. All persons performing manual labor in, on, or about the same; 2. Persons furnishing materials; 3. Subcontractors; 4. Original contractors. Section 11 (page 149) of the Idaho act provides substantially the same as section 1194 of the California law, and section 1673 of the Washington law is to the same effect, except that it places laborers and materialmen on

the same footing.  The provisions of those sections apply
when there are no mortgage liens intervening between the
mechanics' and laborers' liens, and were not intended to in-
terfere with mortgage liens that had attached prior to the
lien claimant commencing to perform the labor or the mate-
rialmen commencing to furnish the material.  We turn to Cal-
ifornia to ascertain if the supreme court of that state has con-
strued the provisions of said section 1186 of the California
statutes.  In *Preston v. Sonora Lodge,* 39 Cal. 116, the court
say: "These provisions of the law having thus fixed the rights
of the statutory lienholders *inter sese,* the act further pro-
vides in substance that such liens shall be preferred to that
of any mortgage subsequently attaching upon the prem-
ises, or subsequently recorded.  It contains, however,
no provision authorizing, under any circumstances, the dis-
placement or disturbance of a mortgage lien once attached,
nor its postponement to any lien arising at a subsequent time;
nor does it contemplate that the mortgagor and materialmen,
or laborer, may, as the result of a contract made between
themselves, without consulting the mortgagee, improve the
latter out of such absolute prior lien upon the premises as he
may have theretofore lawfully obtained. . . . . As it is con-
ceded that the respondents Scott, Zelian, Ford and Fitzger-
ald only commenced work on the premises long after (Scott,
the earliest of them, fully one month after) the mortgage was
recorded, the court below erred in preferring their liens to that
of the mortgage."  This decision was rendered in 1870, and
said section 1186 was amended in phraseology in 1872; but
its effect is the same on the point under consideration as the
law of 1868, under which said decision was rendered.  In
*Crowell v. Gilmore,* 18 Cal. 370, it was held, under the me-
chanics' lien law of 1856, that the mechanic making the first
contract or first commencing work on a building had no pri-
ority over others commencing work subsequently, and that
said law placed all lien claimants on an equality.  In that
case it was held that the rule of equity there stated would not
apply, if some of the mechanics began work before a mort-
gage was executed by the owner of the property thereon, and

some afterward; that in such case the first lienholders would have priority over the mortgagee, while the latter would not. As touching upon the question under consideration, see *Root v. Bryant,* 57 Cal. 48. The court held in that case that the lien of the mortgagee was superior to the lien claimed by plaintiffs, unless the plaintiffs, at the time they performed the labor or commenced to furnish the materials, had no notice of the existence of the then unrecorded mortgage, and cites said section 1186 of the Code of Civil Procedure. It is held by the California courts that liens for furnishing materials or work and labor relate to the time of beginning to furnish the material or commencing the work. In *Pacific Mutual L. Ins. Co. v. Fisher,* 106 Cal. 224, 39 Pac. 758, it is held that the lien for furnishing materials relates to the date of beginning to furnish them, and includes all the materials thereafter furnished for the building, and that such lien has priority over a mortgage after the date of the commencement to furnish the material, and it is there stated that "for the purpose of constructing the building the owner may enter into different original contracts for the different departments of work involved therein (as was done in the case at bar). If he should enter into a contract with one person for the construction of the building in all its parts, except the painting, and he afterward entered into a contract with another person to do the painting of the building, each of these individuals would be an original contractor, within the meaning of the statute; and it would be immaterial whether the latter contract was entered into prior to the completion of the former one. If the owner did not enter into the latter contract until after the completion of the former contract, it could not be claimed that a lien to be filed therefor would in any respect depend upon the completion of the building." When a building is constructed by several persons under different contracts, as when A digs the cellar and does the stonework thereof, and puts in the foundation, and B then does the carpenter work and furnishes the wood material, and C furnishes and does the plumbing, and D furnishes the paint and does the painting, all of which work is done under the supervision of the owner,

and under distinct and separate contracts, D's lien would
not relate back to the commencement of the cellar and stone-
work by A, provided that prior to D commencing the work
done by him th owner had placed a mortgage on such prem-
ises, and D had notice thereof.  Now, if A had the contract
to complete said building, and employed men to do so, his
lien therefor would date from the commencement of the build-
ing, and would have been prior to any mortgage executed sub-
sequent to the commencement of the building.  In a case like
the one at bar it is apparent that the lien is not prior to those
mortgages which were recorded prior to the commencement
of the work for which the lien is filed.

If the contention of counsel for respondent was sustained,
we would have this condition of things.  Supposing Dubois
had let the contract for digging and walling the cellar and
completing the foundation for the building, and, when that
was done, he was not able to pay the contractor for doing that
part of the work, and the contractor thereupon proposed to
the owner that he give him a mortgage on the premises for
the contract price of the work done, as he would prefer that
to a mechanic's lien, and Dubois thereupon executed a mort-
gage to the contractor for the amount due him, and we will
say that on the next day after the execution and recording of
such mortgage the owner purchased material and employed
workmen to complete the building, and they proceed immedi-
ately to do so, and thereafter said lien claiman filed their
liens for labor and material; under that state of facts, to
hold that such liens would be prior to the mortgage of the
contractor who commenced the building and took a mortgage
thereon for the amount due him for the materials furnished
and the labor done thereon would not be just to the mort-
gagee.  In the case before us it is more than probable that
the greater portion of the money realized on said two mort-
gages was paid for labor and material done and used in the
construction of said building, and, if that be true, the mort-
gagees ought certainly to stand in the shoes of those who did
such work and furnished such material, as all subsequent lien
claimants had notice of the mortgages before they commenced

work or commenced to furnish materials. In the case at bar the owner let various contracts for the construction of the building under consideration, but the greater portion of the building, so far as constructed, was done by days' works, except the plumbing, and perhaps a few other parts of the work. Each of the parties, except those who were paid, who furnished materials or performed work, filed a claim of lien on his own behalf, and we think it clear that, if no mortgage had intervened, each of said parties, under the law, are placed on an equal footing. But, as two mortgages intervened, they must be considered as prior liens to such subsequent laborers' and materialmen's liens. In the case of *Home Saving etc. Assn. v. Burton,* 20 Wash. 688, 56 Pac. 940, the supreme court of the state of Washington, in a case very much like the one at bar, construed the provisions of section 1666 of Hill's Annotated Statutes and Codes of Washington, 1891, which section is the same as section 5 of the act under consideration, and said: "The language of this section is so clear and unequivocal that there is no necessity of resorting to any rule of construction to determine its meaning. When the legislature said that the liens for which provision is made were preferred to any lien, mortgage, or other encumbrance of which the lienholder had no notice, and was unrecorded, they also, in effect, said that such liens are not preferred to mortgages of which the lienholder had notice, or were recorded at the time the lien arose." It will be thus seen that the two states that have statutes identical with our section 5 have construed said section, and we are inclined to follow the construction placed upon it by the courts of those states. But it is suggested that, in case of a mortgage lien intervening between prior and subsequent mechanics' liens, injustice will in some way be done to the holder of the subsequent liens. It is sufficient to say that such lienholders have no rights other than such as the statute gives, and, if the liens as given are rendered less valuable because of the mortgage intervening, they cannot complain because they took their liens subject to such contingencies, and subject to those provisions of said law. As to the time when materialmen's liens attach, see *Mechanics'*

*Mill Lumber Co. v. Denny Hotel Co.,* 6 Wash. 122, 32 Pac. 1073. Counsel ₁or respondents have cited cases frcm Montana, Minnesota, Texas and Iowa in support of their contention. Those decisions are not in point, for the reason that the lien laws of those states are not the same as our cwn.

It is contended by counsel for appellant that the court erred in finding that the defendants Kromer and Ferguson, or the Boise Light Company, are entitled to a lien against the premises in controversy, for the reason that their claims of lien fail to show by direct and unequivocal averment any name of the person by whom each of said claimants was employed, or to whom they each furnished materials. We have examined said claims of lien, and find that they each substantially comply with the requirements of the law and are sufficient. We therefore conclude that the judgment of the court below must be reversed, and tne cause remanded, with instructions to · enter judgment in accordance with the views expressed herein. Costs of this appeal are awarded to the appellant.

Stockslager, C. J., concurs.

AILSHIE, J., Dissenting.—The provisions of the lien law under consideration are, it seems to me, too plain and clear to require any construction, but the view taken of them by my associates is so diametrically opposed to what I conceive to be the plain and simple meaning of the English language in which these statutes are expressed that I find myself poring over them to find the meaning my brothers give them. The first territorial legislature, in 1864, enacted a lien law, and nearly every succeeding legislature from that time until the 1881 session either amended the law as it then existed or repealed the entire law and enacted a new and different one in its stead. At the 1881 session a new lien law was enacted, some of the sections of which were similar to provisions then found in the California lien laws, while other provisions were entirely different from the California law, and were evidently taken from the laws of other states. Taken, therefore, as a whole, it cannot be truly said that the lien law of 1881 was

copied from the California statute. Section 819 of the Code of Civil Procedure of that session, however, was practically the same as section 3 of the lien law of California, as approved March 30, 1868 (Stats. 1867-68, p. 589, c. 448), and which was subsequently adopted as section 1186 of Deering's Code of Civil Procedure. And, indeed, this same section was then, and is still, to be found in substance in the lien laws of many states of the Union. The Idaho legislature continued to amend the act of 1881 from time to time until 1893, when the entire lien law which was then embodied in title 4 of part 3 of the Code of Civil Procedure of 1887 was repealed, and the new law was enacted and approved February 27th of that year. (Sess. Laws 1893, p. 49.) By the act of 1893 the entire theory of our lien law was changed, and under it a subcontractor, laborer, or materialman might have an absolute lien direct upon the property, irrespective of the status of the original contractor, or the amount which might be due him on the contract. On the other hand, the old lien law, as found in the 1887 statutes, made the lien of subcontractors, materialmen, and laborers dependent entirely upon the original contractors' status, and, if he had no lien, then the subcontractor, materialman or laborer had no lien, and, if he did, their lien only extended to "the amount then or thereafter due such contractor from such owner or person employing him under the contract." By the act of 1893 our legislature changed from what is sometimes called the "New York lien system" to that frequently designated as the "Pennsylvania system," as discussed in Jones on Liens, section 1285, and Boisot on Mechanics' Liens, section 225 et seq. It should therefore be borne in mind, when examining California cases, that those decisions were announced upon lien statutes following the New York system, and the discussions of the statutes therein contained rest upon that theory of the law. It is true that section 5 (page 51) of the act of 1893 is also found in the California statute, and has frequently been referred to by the courts of that state; but the views of the court upon that section have but little weight in construing our statute, when it is remembered that the general theory and trend of

the other provisions of their statute have differed so widely from ours. My examination, however, of the California statutes convinces me that the court of that state has never at any time gone to the extent of directly announcing the doctrine that is claimed in this case.

I shall briefly review the authorities cited in the majority opinion, since to my mind they all fall so far short of holding what is claimed for them. (*Preston v. Sonora Lodge*, 39 Cal. 116, and *Crowell v. Gilmore*, 18 Cal. 370, are two cases more frequently miscited and misquoted on the various phases of mechanics' liens, and perhaps decide less, than any other cases I have examined on this subject. In the former case the only question before the court was as to whether or not certain persons who had furnished material and performed labor in a quartz mine were entitled to have their liens preferred to that of a mortgage which was executed and recorded prior to the commencement of work by numerous lien claimants. That was the sole and entire question before the court and it was not contended that work in extracting ore from a quartz mine, or running tunnels or opening up or developing the same, should be held or construed as work done or material furnished upon any "building, improvement or structure," so as to allow the lien to attach as of the date of the commencement of such "building, improvement or structure." Indeed, the court said in the course of that opinion: "In the record before us there is nothing indicating, nor do we understand the respondents as claiming in argument here, that the work or repair upon this mine resulted in placing thereon any improvement of the distinctive and exceptional character just mentioned, but the respective claims of all the parties to this controversy are conceded to extend to the entire mining premises, including, of course, all the improvements thereon." In a case like the Preston-Sonora Lodge case, involving work done in a mining claim, as disclosed by the facts of that case, the question here presented could not well arise, because under those facts there is no such thing as the commencement of a "building, improvement or structure" to which such liens could refer for their incep-

tion.    It was purely a question of commencement of "work."
In the Crowell-Gilmore case the only question before the court
was as to whether or not the mechanic who made the first con-
tract or first commenced work had a prior lien over one who
commenced work subsequently on the same building or struc-
ture, and the court applied the principles of equity, and held
that they were all on the same footing.    After deciding the
point before it the court indulged in some speculations which
decided no question in the case, and which apparently had
reference to no statute found upon the books.    In *Root v. Bry-
ant,* 57 Cal. 48, the mortgage was executed in May, 1877, and,
while it was not recorded until November, 1878, the court
held that the lien claimant who performed the labor between
March and July, 1878, was presumed to have had notice of
such mortgage, and that his lien was therefore subordinate
to such mortgage.    *Pacific Mutual L. Ins. Co. v. Fisher,* 106
Cal. 224, 39 Pac. 758, does not pretend to decide any such
question as is before the court in this case.    The point the
court was passing upon when it used the language quoted in
the majority opinion in this case was as to whether or not a
person who furnished materials for building under a direct
contract with the owner might file his lien within the statu-
tory time after he completed his contract, or whether he should
wait until the building was completed before filing his claim.
In a discussion of that question the court used the language
cited, and held that each laborer or materialman who con-
tracted directly with the owner should be held to be an "orig-
inal contractor," and to that extent departed from its former
holding, which this court had refused to follow in *Colorado
Iron Works v. Rickenberg,* 4 Idaho, 262, 38 Pac. 651.    It is
true that some things are said in the syllabus to this case
(which was not written by the court) that are in no way
passed upon or decided in the opinion.

   It is claimed, however, that our statute is very similar to
that of the state of Washington, and that the Washington
court has construed the section here involved in *Mechanics'
Mill etc. Co. v. Denny Hotel Co.,* 6 Wash. 122, 32 Pac. 1073,
and *Home Savings etc. Assn. v. Burton,* 20 Wash. 688, 56

Pac. 940. In each of these cases the Washington court has held that the lien must date from the time the work was commenced or the material was commenced to be furnished, and not from the commencement of the building. Each of those cases was decided by merely a majority of the court; the minority apparently having expressed no opinion in the cases. An examination of those cases discloses, also, that they were decided upon the provisions of section 1666, volume 1 of the Code of that state, which is the same as section 5 of our lien law (Laws 1899, p. 148), and that no consideration was given to the other significant provisions of the same act. The most casual reading of the Home Sav. etc. Assn. case will disclose the fact that the learned judge who wrote that opinion overlooked the vital portion of the section when he said: "When the legislature said that the liens for which pr vision was made are preferred to any lien, mortgage or other encumbrance of which the lienholder had no notice, and was unrecorded, they also in effect said that such liens are not preferred to mortgages of which the lienholder had notice, or were recorded at the time the lien arose." Now, it is generally recognized, where recording laws prevail, that a person dealing with real property is not bound by any unrecorded mortgages unless it be shown that he has actual notice of them; and that statement of the learned judge does not in any respect answer the portion of the section which says: "The liens provided for in this chapter are preferred to any lien, mortgage or other encumbiance which may have attached subsequent to the time when the building, improvement or structure was commenced." The vital question there was as to when the lien "arose" under the Washington statute.

In the majority opinion, after some analysis of section 5, and the conclusion that each lien dates from the time the work was begun or the material furnished, the question is asked: "If that were not intended, why did not the legislature simply say that all liens for labor and material furnished in the erection or construction or repair or change of a building took effect from the commencement of the construction of such building, or of such repair or change?" The answer to the

question is simple. Section 5 provides the preference for all
liens enumerated in that chapter, and the chapter contains
numerous matters and things for which liens are provided,
other than that for ''labor and material furnished in the erec-
tion or construction or repair or change of a building.'' Sec-
tion 5 consists of one sentence, and there is nothing compli-
cated or difficult in the language used. The first part of the
sentence, namely, ''the liens provided for in this chapter are
preferred to any lien, mortgage or other encumbrance which
may have attached subsequent to the time when the building,
improvement or structure was commenced,'' is to be found in
the lien statutes of several states, and the courts of those
states have had no difficulty in holding that such a statute
entitled all liens to relate back to the time of commencement
of ''the building, improvement or structure.'' (*Gardner v.
Leck,* 52 Minn. 522, 54 N. W. 748; *Oriental Hotel Co. v.
Griffiths,* 88 Tex. 574, 53 Am. St. Rep. 790, 33 S. W. 652, 30
L. R. A. 765; *Neilson v. Iowa Eastern Ry. Co.,* 44 Iowa, 71;
*Insurance Co. v. Slye,* 45 Iowa, 615; *Davis v. Bilsland,* 18
Wall. 659, 21 L. ed. 969; *Kansas Mtg. Co. v. Weyerhaeuser,*
48 Kan. 335, 29 Pac. 153; *Haxtun Steam Heater Co. v. Gordon,*
2 N. Dak. 246, 33 Am. St. Rep. 776, 50 N. W. 708; *Norris' Ap-
peal,* 30 Pa. St. 122; *Watts v. Sweeney,* 127 Ind. 116, 22 Am.
St. Rep. 615, 26 N. E. 680; *Vilas v. McDonough Mfg. Co.,*
91 Wis. 607, 51 Am. St. Rep. 925, 65 N. W. 488, 30 L. R. A.
778; *Dubois v. Wilson,* 21 Mo. 213.) But the Idaho statute
is a much more comprehensive and liberal statute in the al-
lowance of liens than most states have, and allows a lien for
labor done in the construction, alteration, or repair of any
building, wharf, bridge, ditch, dike, flume, tunnel, fence,
machinery, railroad, wagon road, aqueduct, or work in any
mine, or for work done in grading any lot, or filling and
grading any street in front of any lot, or for work done on
any public improvement or structure for any city, town,
county, or school district, and allows a lien for any material
furnished in connection with any such work. Following upon
the enumeration of the various work for which liens are al-
lowed, section 5, in prescribing the preference for such liens,

goes beyond the mere enumeration of "buildings, improvements or structures," and provides that in case the lien should be one for which the work was not done, or the materials were not furnished, upon a "building, improvement or structure," then the lien should date from the time the work was commenced or the materials were commenced to be furnished. For instance, if the work was done in a mine, then the only period of time from which the right of the lien to attach could date would be from the commencement of the work, and if he should furnish materials for a mine, tunnel, or in grading a lot or a street, then the only time from which the lien right could date would be from the commencement to furnish such materials, since they were not furnished in the erection or construction of a "building or structure."

It seems to me that the legislature could not have written a statute plainer if they had tried, and that this is only capable of the one meaning. There is no such thing known to the statute as a lien for commencing a building or structure, or for anything other than labor in some form or materials furnished. It takes both labor and material for the construction of a building, and, when the legislature said that liens for constructing a "building, improvement or structure" should be preferred to any lien, mortgage or other encumbrance which might attach subsequent to the commencement of such building, improvement or structure, it certainly meant to allow liens for every kind of labor and every kind of material which go to the erection and completion of such building, improvement, or structure. Any other view that may be taken of it leaves this language absolutely meaningless and surplusage. By the construction placed upon this statute by the majority of the court a contractor who has done one day's work toward the construction of the building for which he has contracted may have a lien for the labor and material necessary to the completion of the building, and yet the laborers who commenced work the next day, and the materialman who began furnishing the material on the following day, may all be deprived of their right of lien by reason of a mortgage which has been executed during the intervening night. This

is neither reason, justice, nor, in my opinion, the purpose or intention of the law. Under the construction placed upon this statute, if one man should commence to labor on a building and another to furnish materials, and the next day a $50,000 mortgage should be placed upon the premises, these two men might continue—the one to labor and the other to furnish material—for ten years, and finish the building and be entitled to their lien, but if the owner or contractor should, or the following day after the execution of the mortgage, employ a large crew of men to labor, and a sufficient number of others to furnish materials, so that the building might be completed in a half a year, both the mortgagee and the owner of the building would have received the benefit of the improvement and the use of the building, and yet these additional laborers and materialmen would be entitled to no lien. Such a proposition, to my mind, discloses one of the innumerable absurdities into which such a conclusion must inevitably lead.

The statute, however, furnishes still further potent reasons why the conclusion of the majority in this case is contrary to every thought and intention of the lawmakers when writing and enacting the statute. Section 11 (page 149) of the act provides the rank and classification of the liens as follows: "In every case where different liens are asserted against any property, the court in the judgment must declare the rank of each lien or class of liens which shall be in the following order: 1. All laborers, other than contractors; 2. All materialmen, other than contractors or subcontractors; 3. Subcontractors; 4. The original contractor; and in case the proceeds of sale under this chapter shall be insufficient to pay all lienholders under it: 1. The lien of all laborers, other than the original contractor and subcontractor, shall first be paid in full, or *pro rata,* if the proceeds be insufficient to pay them in full; 2. The lien of materialmen, other than the original contractor or subcontractor, shall be paid in full, or *pro rata,* if the proceeds be insufficient to pay them in full; 3. And out of the remainder, if any, the subcontractors shall be paid in full, or *pro rata,* if the remainder be insufficient

to pay them in full, and the remainder, if any, shall be paid to the original contractor; and each claimant shall be entitled to execution for any balance due him after such distribution; such execution to be issued by the clerk of the court upon demand, on the return of the sheriff or other officer making the same, showing such balance due.'' Section 12 (page 150) provides that any number of persons making liens against the same property may join as plaintiffs in the action for the foreclosure of their liens, and that in case they commence separate actions the court, by its order, may consolidate them. Now, it is obvious that the legislature would never have authorized lien claimants to join as plaintiffs whose interests were adverse to each other. But under the holding in this case there would in most cases be more rivalry and adverse interests displayed among the various lien claimants themselves in the effort of each to show that his lien is superior and preferred to that of his coplaintiff than would often be manifest or developed as against the real defendant and owner of the property. Whenever we say that each lien dates its inception and attaches from the date the claimant commenced work or furnishing material, we at once abrogate every provision of section 11, *supra,* and leave the entire section a dead letter on the statute books. By the terms of that section the original contractor is the fourth and last in the list of preferences and priorities as among the lien claimants, and, of course, he is always the first man who makes a contract with reference to a building, and the first one to do any work with reference thereto. Now, under the holding of my brothers, it is stated that such contractor might take a mortgage on the property for his claim, and that he would thereby have secured a lien prior to that of all laborers or materialmen who might commence work or the furnishing of material subsequent to the date on which the mortgage was executed. It is even said that it ''would not be just to the mortgagee'' to allow the lien claimants a preference over him under such a state of facts. I ask the question: Is it possible that we have a lien law which could be evaded in such a palpable manner, and its provisions, which were intended

as a shield and protection to laboring men, turned into an instrument and means for cheating and defrauding them in such a manner? Is it possible that a lien created by law for the protection of laboring men is so much inferior to the devices and machinations of wily contractors and irresponsible property owners that they may create a lien by contract that will rise so superior to the statutory lien as to deprive the very persons for whom it was enacted of its protection? When the money-lender takes his mortgage on a property on which a building is being erected he can see with his own eyes what is being done—that a building is under course of construction, and that its completion will enhance the value of his security to the extent of the value of such structure. He also has notice that the men who performed the labor and furnished the material in the construction of such building must be paid, and that they are entitled to liens on the property, and that the statute says their liens are "preferred to any lien, mortgage or other encumbrance which may attach subsequent to the time when the building, improvement or structure was commenced." This is manifest justice, and any departure from it is a departure from the spirit and intent of the statute and the plainest dictates of equity. Is it possible that every carpenter, mason, hod-carrier, painter, or plasterer employed to work on a $50,000 building, who knows neither the owner of the building nor the contractor, must, before doing a day's work on the building for the sum of $3 or $4, spend two or three days in traveling, as it would be necessary in many counties in this state, a distance of one hundred miles or more to the county seat to examine the records and ascertain whether the owner has placed a mortgage of record upon the property? And, perhaps, if he found no mortgage of record, before his return and commencement of work the mortgage would be of record, and then the court tells him that the mortgage is ahead of his lien claim. It is a notorious fact that the laboring man is not the man who examines the records. He has other things to do, and this was undoubtedly one of the many considerations which led the legislature to provide that a lien for his labor might have its

inception and date from the commencement of the building. The individual, corporation or trust company that loans money has time both for the examination of the records as well as the property on which they take their mortgage, and they always do so, and their means of ascertaining whether a building is under course of construction are ample and never overlooked by them.

The principle involved in this statute is clearly this: That the commencement of a building on the premises constitutes actual notice to all the world that a building is to be constructed, and that such notice rises superior to all subsequent constructive notices that can be given under the recording laws. The statute of Texas, so far as it goes, is very similar to our section 5, and the supreme court of that state, in *Oriental Hotel Co. v. Griffiths*, 88 Tex. 574, 53 Am. St. Rep. 790, 33 S. W. 652, 30 L. R. A. 765, held that the statute intended to place all liens upon an equal footing, and that, when claimed upon a building, all dated from the commencement of the building. In discussing this question the court said: "When a building or other improvement is in course of construction, and any person takes a mortgage on the land upon which such building or improvement is situated, or on the improvement itself, he does so with the knowledge that it may be necessary, for the completion of the building, that other contracts should be made for labor and material; and it is clearly the policy of this state, as shown by its statute law, that an intervening mortgagee shall not destroy the statutory rights of persons that may be acquired thereafter in the course of constructing such building. The deed of trust in this case expressly reserves a lien upon the building thereafter to be constructed, and it is evident from the facts that the principal security for the bonds which were being sold was to be created by the completion of the contemplated hotel building. If the position taken by the counsel for the Oriental Investment Company be correct, then an intervening mortgagee could arrest the progress of such work, destroy the statutory rights and liens of all persons who might be engaged in the work, and assert a lien by contract which would be superior to that given by the law un-

der which the contract was made. This, we believe, cannot be maintained. . . . . The man who lays the foundation has an equal claim upon the whole structure with all others, and the man who completes the work has an equal claim upon the foundation with him who does the work thereon or furnishes the material therefor. The lien, then, which is secured by statute, extends in favor of each, from the beginning to the completion of the work, and, if it so extends and embraces all that has been done from the beginning to the completion, its 'inception' must be the time to which it is made to relate in giving effect." This case contains a very able and lucid discussion of the question, and of the purpose and intention of the lien statutes, and is worthy of much consideration. In *Davis v. Bilsland,* 18 Wall. 659, 21 L. ed. 969, this question arose over a Montana statute very similar to ours, so far as it went, though less comprehensive, and in the course of its consideration Mr. Justice Bradley said: "The liens secured to mechanics and materialmen have precedence over all other encumbrances put upon the property after the commencement of the building; and this is right. Why should a purchaser or lender have the benefit of the labor or materials which go into the property and give it its existence? At all events the law is clear." In *Neilson v. Iowa Eastern Ry. Co.,* 44 Iowa, 71, the supreme court, in considering a statute of Iowa substantially the same as section 5 of our statute, with the exception that it did not contain the words "work done or materials were commenced to be furnished," held that all liens attached from the commencement of the building. The first paragraph of the syllabus to that case is as follows: "A mechanic's lien attaches from the commencement of the building, and takes precedence over a mortgage executed after that time, although the particular work for which the lien is claimed was not commenced until after the execution of the mortgage." (See, also, *Insurance Co. v. Slye,* 45 Iowa, 615.) The same conclusion has been reached under the statute of Kansas, substantially the same as the Iowa statute. (See *Kansas Mtg. Co. v. Weyerhaeuser,* 48 Kan. 335, 29 Pac. 153; *Warden v. Sabins,* 36 Kan. 165, 12

Pac. 520.)   The supreme court of Missouri held to the same effect as early as 1855.   (See *Dubois' Admr. v. Wilson's Trustee,* 21 Mo. 213.)   In *Gardner v. Leck,* 52 Minn. 522, 54 N. W. 746, the supreme court of Minnesota overruled its former decisions on this question, and held that all liens for work done and materials furnished in the construction of a building should date from the commencement of such building.   This decision was by a divided court, but the reasoning found in the opinion of Justice Collins appeals to me as sound, and founded upon the true intent and spirit of the statute.   In course of the opinion it is said: "A majority of this court are clearly of the opinion that the views expressed in the Finlayson case (47 Minn. 74, 49 N. W. 398, 645) are unsound.   If such a method of distribution were adopted, it would result in deferring to some extent the lien claims of those who had performed work or furnished material before the execution of the mortgage to its lien in every case where the premises sold for more than sufficient to pay prior, in point of time, claimants, because those ahead would have to share with those behind the mortgage.   It would compel those who had performed their labor or furnished materials upon the strength of an unencumbered title to submit to a possible postponement of their claims to an encumbrance in no manner connected with the improvements, and brought into existence during or perhaps subsequent to, the fulfillment of their contracts.   It would place it in the power of the owner of the real estate to mortgage it so as to substantially affect rights already assured and relied on, and virtually to destroy the statutory security.   Significant illustrations of this kind might be multiplied, but are unnecessary.   To permit assured rights to be thus displaced, really at the option of the owner, is opposed to the spirit and intent of the law. . . . . . There is nothing novel or unjust in a law which gives priority to the liens of mechanics and materialmen over those of other parties, originating subsequent to the commencement of the improvements on the land.   In at least twenty states such laws have been enacted, and again and again have they been sustained by the courts.

These states are named, and a synopsis of their lien statutes given, in Jones on Liens, sections 1187, 1469.'' After proceeding to announce the two theories presented to the court it is again said: ''The inevitable logic of what we have said is that, whenever a mortgage or other encumbrance or distinct lien originates subsequently to the commencement of the work on the ground, or the furnishing of materials at the same place, so that the world may have notice of the proposed improvement, it must yield to the claims of all who have contributed to the completion of the structure with their work or materials. A mortgage placed upon real property subsequent to the commencement of a building, after lien rights have attached, must be subordinated to the liens provided for in chapter 200, page 313 of the General Laws of 1889. The rights of the person who first labors, or those of the materialman who first furnishes material, in respect to the time they attach, are fixed by statute; and it was the plain and unmistakable intention of the legislature to date all lien rights from this time, and to place all who may be engaged in a common enterprise—the erection and construction of a building—upon the same footing.''

Again reverting to our statute, we find that the legislature was careful in every section to provide the manner and method of securing a lien to every person entitled thereto under chapter 1 of the act. Section 6 (page 148) prescribes that every original contractor must file his claim within sixty days, and every other person within thirty days, ''after the completion of any building, improvement or structure, or after the completion of the alteration or repair thereof or after he has ceased to labor thereon from any cause, or after he has ceased to furnish materials therefor, or after the performance of any labor in a mine or mining claim.'' This is a further illustration of the fact that the legislature meant all liens for labor or material used in the construction of a building to date from the commencement of the building, and if for labor on something other than a building, as in a mine or on mining claim, then from the commencement of the labor, etc. Another significant fact dis-

closed by this section is that wherein it provides the kind and character of lien to be filed. It nowhere requires the claimant to state when he commenced work or furnishing materials. After prescribing these numerous provisions in detail the entire act closes by admonishing the courts that "its provisions and all proceedings under it are to be liberally construed with a view to effect its object"; and there can be no question as to what its object is. That object is to secure liens to the laborers and materialmen enumerated in the act. I am thoroughly satisfied that the trial court arrived at the correct conclusion as to the intent and purpose of this statute, and, indeed, the clear and unequivocal expression of the statute itself, and his judgment should be affirmed.

### ON REHEARING.

(December 23, 1905.)

SULLIVAN, J.—A rehearing was granted in this case and again submitted on a reargument. It is very earnestly contended that the court has failed to apply the plain rules of statutory construction in construing the mechanic's lien law under consideration. We are quite well acquainted with the rules of statutory construction quoted and cited by counsel for the petitioners, and are fully satisfied that we have faithfully and correctly applied these rules to the construction of the act under consideration, and see no cause for changing the views heretofore expressed in this case.

The main question for consideration is whether the mortgages should be subrogated and declared subsequent to other liens, or whether said liens all relate back to the time of the commencement of the construction of the building, irrespective of the time when the labor was performed or the material furnished. The decision of that question rests largely on the provisions of section 5 of the lien law under consideration (Laws 1899, p. 148), and we think it clear that our construction of that statute heretofore given is the correct one. In arriving at that conclusion we have not overlooked the various provisions of said act in their objects and purposes. And the provisions of section 11 (page 149)

apply to cases where no mortgages intervene, and also in cases where mortgages intervene, and the lien claimants are thereby divided into classes. It was not the intention of the legislature enacting said law to make valueless a mortgage lien that had attached to the premises involved in this case prior to the time the lien claimant furnished any material or performed any labor toward the construction, repair or alteration of the building. It is suggested by counsel for the petitioner that the legislature intended to protect the poor against the ''avaricious,'' and against the ''machinations'' of those who would defraud and defeat them of their honest, hard-earned wages. That, no doubt, is true, but there is not an intimation in this case, and the record shows none, that the mortgagees have conspired in any manner to defraud or cheat any of the lien claimants, and that the mortgages are not valid. It is no doubt true that the very money for which the mortgages were given was used in payment for material and labor used in the construction of the said building. If it were anywhere shown that either of said mortgages, or any part thereof, were fraudulent, a court of equity, upon the proper showing, would grant relief against them. As heretofore stated, the mechanic's lien laws of California and Washington are substantially the same as our own, and their objects and purposes are the same. The same is true of the lien laws of Nevada, so far as the provisions of section 5 of our law is concerned. While some of the details of the Nevada law differ from our own, the objects and purposes are the same, and in *Capron v. Strout,* 11 Nev. 304, it is said: ''Capron's mortgage was recorded February 25, 1874, and all work done by Stewart after the expiration of his then current month was done under contracts made by him after legal notice of Capron's rights, and his lien for such work is subordinate to Capron's mortgage.'' It does not seem possible that any unprejudiced mind can fairly construe said provisions of our lien law as counsel for petitioners attempt to construe them. Under their construction, if, at the time the $20,000 mortgage was given on the premises in question, the workmen and materialmen (there was no orig-

inal contractor) had all and every one of them ceased work, and never thereafter performed any work nor furnished any material in connection with said building whatever, and the owner had executed the $20,000 mortgage to raise money with which to pay them what was due them, and thereafter other materialmen and laborers performed labor in the completion of said building, the mortgagees' rights must be subrogated to the claim of the latter. That is a most monstrous proposition to my mind, and I do not believe the legislature ever intended such a result, and it would be contrary to the plain provisions of the act under consideration. Under counsel's theory no mortgage or other encumbrance could attach, if the improvement of the structure was commenced, work done, or materials were commenced to be furnished prior thereto; and, if that were the intention of the legislature, it certainly would have been expressed in plain and unequivocal language.

Section 1186 of the Code of Civil Procedure of California is the same as section 5 of our mechanic's lien law, and section 1666 of Hill's Annotated Statutes and Codes of Washington of 1891 is the same as our said section 5. Section 1194 of the Code of Civil Procedure of California and section 1673 of the Washington law are the same as section 11 of our lien law, in that it is provided in each that the court, in its judgment in lien cases, must declare the rank of each lien or class of liens. However, the order of classification is a little different, both in California and Washington. It is sufficient to say that the supreme court of Washington, in the case of *Huttig Bros. Mfg. Co. v. Denny Hotel Co.,* 6 Wash. 122, 32 Pac. 1073, and *Home Savings etc. Assn. v. Burton,* 20 Wash. 688, 56 Pac. 940, held that the liens must date from the time the work was commenced or the material was commenced to be furnished, and not from the commencement of the building. In each of those cases mortgages intervened, and at the time those decisions were rendered the lien laws of Washington required the court to declare the rank of each lien. The argument of counsel for appellant, to the effect that the supreme court of Washington in

those cases overlooked or disregarded the provisions of said section 1673 of the Washington law, has very little force with us. And, even though the mechanic's lien law of California did not contain provisions requiring the court to declare the rank or class of each lien until 1885, we are fully satisfied with the California court's construction of the provisions of section 1186 of the California law, which is identically the same as said section 5 of our own. We are unable to see any good reason for placing a different construction upon the provisions of said section 5 after the adoption of an amendment requiring the court to declare the rank or class of the liens.

It is suggested by counsel for appellant that the court in its former opinion failed to pass upon the validity of the Flannagan lien, and he now urges that we pass upon it. We are not satisfied that it appears from the record that all of the evidence produced at the hearing of the trial in regard to that lien is before the court, and for that reason we are not inclined to disturb the findings of that court in that regard.

It is urged by counsel for the petitioners that this court ought to instruct the trial court what judgment it should enter in this case, or whether it should rank or classify the liens. But it is contended by counsel for one of the lien claimants that that question was not presented on the original hearing, and should not be considered now by this court. The mortgagees were the only appellants, and the only question presented on the appeal was whether the liens related back to the time of the commencement of the building, irrespective of the time when the labor was commenced to be performed or the material commenced to be furnished. Counsel for respondents contended that all liens related and should date from the time of the commencement of the building. The question of the rank or class of the several laborers', mechanics' or materialmen's liens was not raised on the hearing. That being true, under the recognized rule that questions which were not raised on the original hearing will not be considered on rehearing, applies here. (See *Powell*

*v. Nevada C. & O. Ry. Co.* (Nev.), 82 Pac. 96.)   However, a question similar to the one under discussion is decided by the supreme court of Nebraska in *Henry N Coatsworth Co. v. Fisherdick,* 37 Neb. 207, 55 N. W. 643.

We are fully satisfied that our decision on the original hearing in this case is right, and the views therein expressed are hereby confirmed. The judgment of the trial court is reversed, and the cause remanded. Costs are awarded to appellant.

STOCKSLAGER, C. J., Concurring.—From some of the arguments of counsel in support of the petition for rehearing, and in dissenting opinion of our brother, it would seem that they are laboring under the impression that in some way the majority opinion does the laboring man a great injustice. It will always be conceded that laws are enacted with the view of equal justice to all. Indeed, our civil and political liberties—our property rights—are founded on this rule. "Equal justice to all, special privileges to none," should and does apply to capital and labor and to every avocation in this country of boasted freedom, independence, and justice. The mechanic's lien law of this state furnishes ample protection for the laboring man, the materialman, the capitalist, and any and all who may furnish labor, money, or material for the erection or construction of a building in this state. There was no contractor in the erection of the building in controversy. Dr. Dubois, the owner, was constructing the building, employing the labor, buying the materials, and making settlement for such material and labor on his own contracts. After the building had progressed, and a large amount of labor and material had been employed and furnished, a mortgage was given and recorded for the sum of $20,000 covering said building. It is not contended by counsel for appellant, nor would it be held by this court, that any and all labor done or materials furnished prior to the recording of the mortgage would not be a prior lien upon the premises. Subsequent to the recording of the mortgage all labor done or material furnished was with notice of the

existence of the lien created by the mortgage, and the laboring men and materialmen were privileged to say to the owner of the building: "You have placed a mortgage lien in the sum of $20,000 on this property. We do not care to take chances on a lien for our labor or material, with the record fact of the existence of this mortgage. If you desire our labor or material, it will be necessary for you to pay for it as you get it." If they could not make satisfactory arrangements for their pay, they were certainly under no obligations to furnish the labor or material. It is more than probable that most, if not all, the proceeds of the mortgage were used in payment for work done and material furnished prior to its execution. In all reason the builder was under obligations to the mortgagee to pay up and cancel any liens or obligations prior to the mortgage, at least so far as the proceeds would go toward making such payment.

If we were to accept the contention of counsel for some of the respondents as the law governing this case, it might, and we think would have, a disastrous effect on the upbuilding of our cities, towns, and villages. Money is absolutely necessary for building anywhere, and if security cannot be given until the building is completed and all liens cleared, it would in many cases be impossible to complete the work. We think the case at bar furnishes a good illustration of the evil effects of such a construction of our statute. Dr. Dubois did not have the ready money to complete this building. Work and labor could not be had without means to pay. Mortgages were given for the purpose of raising the money to complete the work of construction. If, after he had executed the two mortgages and placed them on record, materialmen and laborers did not think the building of sufficient value to pay the liens thus created, and them after satisfying such liens, then it was their privilege, as well as duty, to refuse to furnish material or perform labor without pay, or sufficient and satisfactory security that they would be paid. In that case, if the building would not sell for a sufficient amount to satisfy the mortgage liens, no one would suffer, excepting the mortgagor and mortgagee, as all

claims for material and labor prior to the mortgages would be prior liens.  If my conclusion is correct, and I think it certainly is, the law surrounds the laboring man with every safeguard.  He is protected with a lien prior to the execution of the mortgage, and thereafter he need not perform labor without daily pay or satisfactory security.

AILSHIE, J., Dissenting.—The results of this case furnish a rigorous example of either a grave defect and injustice existing in our lien laws, or an unfortunate misconstruction and application of its provisions.  Here, as will occur in most cases, a materialman commences to furnish material for the building before any labor is performed in its construction, and immediately thereafter, and prior to the commencement of work by certain laborers, mortgages to the amount of $30,000 are given on the premises.  In this case the men who performed the labor, and out of this material erected a completed structure, must stand by and see the · materialman paid first, and then the mortgagee receives his money, and, if the unexpected and unusual should happen, he may then, thirdly, in the order of preferences, receive his pay.  This, too, directly in view of the provisions of section 11 of the lien law (Laws 1899, p. 149), which says the laborers' lien shall rank first in the order of preferences and priorities among lien claimants.  Under these conditions and circumstances it seems to me that the burden of loss falls unequally and unjustly heavy upon the shoulders of labor.  On the reargument of this case it was urged by the respondent that, in the event the court should adhere to the majority opinion originally filed, then the court should direct the trial court as to the kind and character of decree to be entered, and the priorities and order of preferences to be recognized in the decree, as among the various lien claimants and the mortgagee.  The majority, however, decline to point out the preferences among these claimants, or to direct the trial court as to the decree, although the opinion refers to *Henry & Coatsworth Co. v. Fisherdick*, 37 Neb. 207, 55 N. W. 643, as being a case similar to this, and one which

might afford proper direction to the court. I am not yet prepared to believe that the majority of this court would approve of a decree entered in conformity with the decree directed in this Nebraska case. Indeed, that case ought not to be considered for a moment as authority under our statute. An examination of chapter 54 of the Compiled Statutes of Nebraska of 1881 will disclose the fact that the Nebraska mechanic's lien law bears no similarity to ours, and is entirely destitute of any provisions corresponding to sections 5 and 11 of our lien law. As I read and understand section 3818 of the Revised Statutes of 1887, it becomes the duty of this court in a case like the one at bar, where judgment is reversed without granting a new trial, to direct, or at least indicate, the correct judgment to be enterd in the lower court. This question must necessarily arise when the *remittitur* goes down. The lower court has proceeded upon the theory that it was his duty, in entering judgment in such a case, to follow the requirements of section 11 of the lien law, and I think he was entirely correct in that view. The court here, however, has reversed the judgment entered in conformity with that section of the statute. The question will at once arise in the district court as to whether or not the court shall give the materialman the preference over the laborer or the laborer preference over the materialman, or whether they shall all be thrown into hotchpotch, and laborers, materialmen, and contractors be all classed together. My associates in the majority opinion say: "The provisions of section 11 apply to cases where no mortgages intervene, and also in cases where mortgages intervene and the lien claimants are thereby divided into classes." I am not sure that I understand just what is meant by this observation, but it is quite clear to me, after reading section 11, that it does not contain such language, nor do I find any exception made therein as to the application of the rule of priorities among claimants. I know of no authority to be found in the books that justifies interpolating new and additional language into a statute that is already clear and ex-

plicit. I am still the more firmly convinced that the judgment of the district court should be affirmed.

Since writing the foregoing the chief justice has written his concurring opinion. It is there held in effect that every man who seeks employment on a building in course of construction must, at his peril, examine the county records from time to time to ascertain whether any mortgage or encumbrance has in the meanwhile been placed on the property. The view I have endeavored to express is that, as I read the statute, the legislature intended that the fact a building is in course of construction when a loan is made on the property is itself actual notice to the lender that the building is to be completed, and that those who complete it must be paid, and that therefore the laborer and materialman may work and furnish material without examining records or incurring the penalties of constructive notice.