## J. W. McCAUSEY & CO. *v.* GITTLEMAN.

1. MECHANICS' LIENS—STATUTES—CONSTRUCTION.

   Lien statutes, being innovations upon the common law over the rights of property, are not to be extended in operation and effect beyond their plain provisions; the provisions by which lien attaches should be strictly construed.

2. MORTGAGES—MECHANICS' LIENS—PRIORITY—STATUTES.

   A mortgage in the hands of an innocent purchaser, executed by the owner of lands to a contractor, and recorded before a building permit was issued or excavation begun, was entitled to priority over mechanics' liens on the building erected on the premises, under the provisions of section 14804, 3 Comp. Laws 1915; there being nothing in the note or mortgage to indicate that they were given for, or had any connection with, a building contract.

3. MECHANICS' LIENS—ENFORCEMENT IN CHANCERY.

   The plainly expressed provisions of the lien law are none the less imperative because by the statute (section 14805, 3 Comp. Laws 1915) a chancery court is made the forum in which the attached liens may be enforced.

4. SAME—CONTRACTS—SPECIFIC PAYMENTS—AFFIDAVITS—STATUTES.

   Where a specific payment provided for in the contract was made by the owner of a building without securing from the contractor the affidavit for his protection from mechanics' liens provided for in section 14799, 3 Comp. Laws 1915, the securing of an affidavit directed to a subsequent specific payment, for which it was procured and to which it by date related, would not extend the protection of the statute to the former payment.

Cross-appeals from Wayne; McDonald, J., presiding. Submitted October 4, 1917. (Docket No. 31.) Decided March 28, 1918.

Bill by J. W. McCausey & Company against Henry B. Gittleman, the Maryland Casualty Company, William E. Moss, the Webster & McCausey Lumber Com-

pany, Walter D. Gale, and Martin Brosteau to foreclose a mechanic's lien. Defendants Lumber Company, Gale and Brosteau filed cross-bills claiming liens. Defendant Moss filed a cross-bill to foreclose a mortgage. From the decree rendered, plaintiff and defendants Lumber Company, Gale and Brosteau appeal. Modified and affirmed.

*Wilkinson, Routier & Hinkley,* for plaintiff and defendants Lumber Company and Gale.

*Cornelius & Ring,* for defendant Brosteau.

*Goodenough & Long,* for defendant Gittleman.

*Beaumont, Smith & Harris,* for defendant Moss.

*Stevens T. Mason,* for defendant Maryland Casualty Company.

STEERE, J.   The bill of complaint in this suit was filed by plaintiff to foreclose and enforce a mechanic's lien amounting to $398.45 for material furnished in the construction of a ten-family flat building upon certain described premises owned by defendant Gittleman in the city of Detroit.

Defendants and cross-complainants Webster & McCausey Lumber Co., Walter D. Gale, and Martin Brosteau also assert and seek to enforce liens for material furnished and work performed on said building.

On June 23, 1914, defendant Gittleman entered into written agreement with a contracting corporation known as the Greenwich Company, of Detroit, for the construction of this building. Horace Hartwell, president of the construction company, represented it in negotiating for and securing the contract. The agreement provided that the building should be constructed by the Greenwich Company according to plans and specifications which were made a part of the contract,

completed and ready for occupancy on or before October 20, 1914, at the specified price of $14,925, it being further stated in the contract that Gittleman should pay or cause to be paid to the company

"the said sum of ——— dollars in the following manner:
1st payt: On execution of the contract, mortgage ....................................... $7,500.00
2d payt: When the foundations are in....... 1,200.00
3d payt: When the building is framed, raised and the roof made waterproof.............. 1,000.00
4th payt: When the building is ready for plastering, cash ............................ 1,000.00
5th payt: When the building is plastered.... 1,000.00
6th payt: When the building is completed.... 1,725.00"

As printed in the record this schedule of payments does not total the contract price by $1,500 and there is apparently some sentence or paragraph omitted, for near the end of the document we find for the first time reference made to an indicated payment by a land contract as follows:

"The land contract for $1,500 above mentioned (which in fact is not 'above mentioned') is a contract by the first party for the sale to S. Balter of lots 16 and 17 of the above-mentioned subdivision, said contract to be received at not exceeding $1,500."

Gittleman testified of this:

"At the time I made fourth payment of $1,000 I transferred the contract and I received from the Greenwich Company receipts and sworn statement."

On June 23, 1914, Gittleman executed a mortgage for $7,500 upon the premises where the building was to be erected in favor of the Greenwich Company. This mortgage was recorded by the Greenwich Company on July 7, 1914, the day before excavation for the basement began and five days before a building permit was issued. The contract and mortgage were contemporaneous, the latter being delivered to the

contractor before any work was begun. To protect Gittleman and insure performance of the contract as entered into, the Greenwich Company on the same date gave him a contractor's bond executed by it and the defendant Maryland Casualty Company in the sum of $15,000. It was given to indemnify Gittleman only, and not for the benefit of laborers, subcontractors, or materialmen. It provided, however, that he should "at all times observe and conform to the laws relating to liens of the State wherein said contract is to be performed." The work progressed slowly and was not near completed within the contract time. The Greenwich Company became financially embarrassed and ceased work entirely on December 18th, and on December 29, 1914, Gittleman served notice upon it of forfeiture of the contract. During the progress of the work he made payments to the company in fulfillment of his part of the agreement as follows:

First payment by note and mortgage as stated.. $7,500
Second payment on August 3d, cash............ 1,200
Third payment September 2d, cash.............. 1,000
Fourth payment October 19th, cash $1,000 (and
  assignment of land contract $1,500), making
  total of ................................. 2,500
Fifth payment on November 13th, cash.......... 1,000
                                              ———————
  Total .......................................$13,200

The last two payments were made subsequent to the time the building should have been completed according to the terms of the contract. It was shown that after the contractors defaulted and abandoned the work Gittleman expended upon the building $1,725 and the bonding company $3,729.02, making the total cost of the completed building $18,654.02.

In the meantime defendant William E. Moss, who testified his business was "investments and bonds,"

purchased, on November 24, 1914, the $7,500 mortgage which had been given to the Greenwich Company, taking from it an assignment of the same which was recorded on the same date. He had, through an agent, examined the property, investigated the title and searched the public records to ascertain if there were any liens against it. He bought this investment in the line of his business, paying the Greenwich Company therefor partly in cash and partly in certain bonds of the Fulton Light & Power Company. Soon thereafter he sold and assigned the note and mortgage to the Northern Assurance Company, agreeing, however, to repurchase the same in event liens were subsequently filed against the property, the possibility of which was then suggested against the paper. On May 18, 1915, it was reassigned to him pursuant to such agreement.

The balances claimed due the respective lienors from the original contractor are apparently not questioned. Plaintiffs' is for $398.45 on material furnished between November 28th and December 1, 1914; Webster & McCausey Lumber Company for $1,749.90 on material furnished between July 27th and December 10, 1914; Gale for $153 on electrical work done between October 6, 1914, and January 15, 1915, and Brosteau, for plastering done between October 21, 1914, and January 7, 1915, asserts a lien for unpaid balance due him amounting to $875.

Upon the hearing in circuit court it was found that the owner, Gittleman, had paid the full contract price of the building under circumstances which protected him against liens; that Moss as an innocent purchaser of the mortgage for a valuable consideration held it free from all liens subsequently filed. Plaintiffs' bill and the lienor defendants' cross-bills were accordingly dismissed.

The questions here raised upon argument and in

the briefs of counsel are:   The sufficiency of the sworn statements under which Gittleman made payments to the contractor, priority over liens of the mortgage given to the contractor as a payment on the contract before the construction began and whether in that connection Moss held a favored position as an innocent, *bona fide* purchaser.

When making payments on the contract Gittleman undertook to, and, it is claimed, did, comply with those provisions of the lien law which, if observed, protect the owner against liens, securing verified statements from the Greenwich Company, sworn to by Hartwell, its president, as he made payments during the progress of the work.   These were of like form and claimed infirmities as those furnished by the same company in its contract, out of which arose the case of *Stevens* v. *Garland,* 198 Mich. 24.   As in that case, under the heading of "amount," is written "nothing due" to the materialmen, subcontractors, and laborers listed.   In view of what is there said and held as to this form of statement, the question is not open for discussion here.

None of these lienors took advantage of the provision for their protection against false statements of the principal contractor.   In *Smalley* v. *Brown-Stone Co.,* 114 Mich. 108, this court said:

"It is true that, for his own protection, the subcontractor, if he wishes to prevent a payment which will be valid as against him, must see to it that the sworn statement of the original contractor (if the owner exacts one) embodies his claim, or must himself serve the notice provided by section 1."

Only as to one person do we find the monotony of equivalent marks under "nothing due" broken by figures showing substantial amounts set opposite the name of H. Solomon, a carpenter who, with the wisdom his name implies, appears to have taken the pre-

caution to fortify himself against the contingency which subsequently materialized, as might any or all of these lienors had they seen fit to avail themselves of the protection which the statute offered.

It is further urged in behalf of the lien claimants that they are entitled to be equitably subrogated to sufficient of the mortgage fund, or proceeds, to pay their liens which should take priority over the mortgage given to the contractor in payment on a contract for performance of which they furnished labor and material. In support of this contention certain cases are cited involving merely an assignment of the principal contractor's claim against the owner for a balance due him on his contract, which are of remote relevancy, and *Bassett* v. *Menage,* 52 Minn. 121, a case in which the doctrine contended for here was applied under the lien law of that State where the mortgage in question yet remained the property of the original contractor, between whom and the lienors the relation of debtor and creditors existed.

The Minnesota lien law under which that case was decided contained no provision for precedence of a mortgage given and recorded prior to commencement of construction of the building in relation to which a subsequent lien is asserted, as does the Michigan statute. In *Miller* v. *Stoddard,* 50 Minn. 272, where it was held, under the facts of the case, that, in the absence of any provision in the lien law a mortgage unrecorded at the time material was furnished for construction of the building, but recorded before lien was filed, took priority, the court commented on the deficiency, saying in part:

"The lien law is equally defective in not making any provision for such cases. Had the statute contained provisions, found in many of the lien laws of other States, to the effect that mechanic's liens shall be preferred to any mortgage or other incumbrance of which the lienholder had no notice, and which was unre-

corded at the time such lien attached, all difficulty would have been avoided. But our statute contains no such provision."

This case was followed in *Noerenberg* v. *Johnson,* 51 Minn. 75; *vide,* also, *Hill* v. *Aldrich,* 48 Minn. 73.

Lien statutes are innovations upon the common law over the rights of property, not to be extended in operation and effect beyond their plain provisions. As to their provisions by which lien attaches strict construction is the recognized rule. In Rockel on Mechanics' Liens, § 155, it is stated as the general rule that—

"All mortgage liens existing before the right to a mechanic's lien comes into existence—having been perfected as the law requires—are prior to the mechanic's lien and mortgages subsequent thereto yield priority to the lien of a mechanic."

Along this line the Michigan mechanic's lien law expressly provides (3 Comp. Laws 1915, § 14804, subd. 4) that liens for labor and material are "subject to any prior recorded title, claim, lien, incumbrance, or mortgage to or upon the land upon which such building  *  *  *  or improvement belongs or is put."

The mortgage in question here was given and recorded before a permit was issued or excavation begun for the building in construction of which these lienors claim to have furnished labor and material. Nothing in the recorded mortgage or the note it was given to secure, which ran for three years, indicated that they were given for or had any connection with a building contract. When Moss bought and paid for this mortgage, and recorded his assignment of it from the mortgagee, the public records showed an otherwise clear title in the mortgagor free from liens or any other incumbrance. He was not in privity with the subsequent lienors or in any way connected with the contract under which they claim to have furnished

labor and material. Of such a situation it was said in *Stevens* v. *Garland, supra:*

"At the time said mortgage was delivered no money was due or to become due to any contractor or materialman. * * * The mortgage was of record and every contractor and materialman dealing with the original contractor had constructive notice of its terms."

We do not conceive that the plainly expressed provisions of the lien law are less imperative because by the statute a chancery court is made the forum in which the attached liens may be enforced. While equity courts are said to be given special jurisdiction to deal with and correct that wherein the law is deficient because of its universality, they do not rise above or have power to change the law, either statute or common. The lien law is not deficient or uncertain as to these lienors' rights. As it reads it afforded them all the protection they now appeal for on claimed equitable grounds had they timely availed themselves of its provisions. This mortgage lien existed and was of record, perfected as the act specifies, before the building was begun or even any initiation of right to a mechanic's lien came into existence, and its priority is fixed by statute. While the trial court decreed its foreclosure in favor of Moss under the prayer therefor in his cross-bill, the only question as to it brought here by this appeal is that of priority over the liens claimed by appellants.

The only remaining question deemed to demand consideration is Gittleman's failure to protect himself by a proper affidavit when making the third payment to the original contractor of $1,000 on September 2d. He introduced in evidence the receipted and dated bills of the Greenwich Company in substantiation of these payments and affidavits on the strength of which it is claimed they were paid. Ample objections were

timely made and they were received subject to such objections. As to these papers the printed record is not altogether satisfactory, nor accurate in some respects. Resort to the original exhibits discloses no protecting affidavit of even approximately contemporaneous date with this third payment of September 2d. The affidavit claimed but not proven to have been furnished with it was sworn to by Hartwell on July 31st, prior to the second payment on August 3d (erroneously stated in the printed list of payments as the 8th) and, if of any significance, would relate to that payment, which was, however, accompanied by an affidavit of the same date (August 3d).

The statute upon which Gittleman relies requires that when any payment becomes due from the owner the original contractor shall furnish him a sworn statement. For his protection he may demand the same and refuse payment until it is furnished, the contractor being subject to a penalty of $100 and all resulting damages for failure to furnish it within five days after demand. Gittleman did not avail himself of these provisions and made this third payment of $1,000 without any sworn statement by the principal contractor of the same or even an approximate date. This was a distinct payment specified in the contract for protection of which special provision is made by statute, and is not protected, under the ruling in *Stevens* v. *Garland, supra,* by a later affidavit in the form furnished, directed to a subsequent specific payment for which it was procured and to which it by date relates. Gittleman's equitable interest in the property described is, under the mortgage held by Moss, subject to claimants' liens to the amount of this unprotected payment of $1,000, and, as simultaneous mortgagees under the statute, they are entitled to foreclosure of their liens *pro rata* to that amount, subject

to said paramount mortgage. The decree of the lower court, so modified, is otherwise affirmed.

The lienors herein will jointly recover costs in this court against defendant Gittleman as on one appeal, and defendant Moss will recover his costs in this court against said lienors.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.