HAMTRAMCK LUMBER & SUPPLY CO. *v.* UNITED HOME
BUILDERS.

1. MECHANICS' LIENS—DEFAULT OF CONTRACTOR—DELAY IN COM-
PLETING BUILDINGS.

In a suit by a materialman to enforce a mechanic's lien,
where other lienors, subsequent purchasers of the prop-
erty, the principal contractor, and the surety on a bond
to release the liens were made defendants, a delay of
seven months between the time of the contractor's default
and the start to complete the buildings, during which
time prices advanced 40 per cent., *held*, to bar the extra
cost of construction from being set up against the liens,
since the cost of completing the buildings must be de-
termined as of the time their completion fell upon the
owner, or within a reasonable period thereafter.

2. SAME—DISTRIBUTION OF ADVANCE PAYMENT—EVIDENCE—BURDEN
OF PROOF.

Where a substantial payment was made by the owner to
the contractor before the contract was signed, the burden
of showing that such payment was distributed according
to the statute (3 Comp. Laws 1915, § 14796) among those
who might claim liens rested upon the owner or subse-
quent purchaser.

3. SAME—ADVANCE PAYMENT—DISTRIBUTION—PROOF.

Where an advance payment was made by the owner to
the contractor without compliance with the statute, and
there is no showing that it was distributed among those
who might claim liens, it is not allowable against the
liens.

4. SAME—AFFIDAVITS—NOTICE BY LIENORS.

A payment made by the owner to the contractor upon
statutory affidavit by the contractor, although paid two
days before the expiration of the statutory time allowed
for notice by lien claimants, was properly allowed against
the liens, where it does not appear that any notice was
given within said statutory period by any lien claimant.

5. Same—Amount of Contract—Amount of Loan Included in Contract.

> That the owner paid in full the part of the contract price which he was to pay, and that the balance was to be raised by a loan upon the property, which was not done, would not relieve the property from the liens, on the ground that the loan was not included in the contract, since if the loan had been made, the owner would have had to comply with the law in paying the money over to the contractor.

6. Same—Waiver—Recoupment for Rent.

> Where the owner waived the time of completion of the buildings, the subsequent purchasers could not recoup, as against the lienors, for loss of rents.

Appeal from Wayne; Hunt (Ormond F.), J. Submitted January 30, 1923. (Docket No. 71.) Decided March 22, 1923.

Bill by the Hamtramck Lumber & Supply Company against the United Home Builders, Inc., and others to foreclose a mechanic's lien. From the decree rendered, plaintiff and certain defendants appeal. Modified and affirmed.

*Frank Day Smith,* for plaintiff.

*Charles Bowles,* for defendants Dickson and McDermand.

*Younglove & Chockley,* for defendant Peckham.

*Ralph B. Wilkinson,* for defendant Barber.

*Colombo, Colombo & Colombo,* for defendant Ferrari.

Wiest, C. J. The original bill herein was filed by plaintiff to enforce a lien for material furnished in the construction of three houses. Other lienors, subsequent purchasers of the property, the principal contractor and the surety on a bond to release the liens, were made defendants.

May 10, 1919, Andrew J. Tarsney was the owner of three lots on Emerson avenue in the city of Detroit,

and on that day made a verbal agreement with the United Home Builders, Inc., for the erection of three residences thereon at $5,300 each, and paid $1,000. July 1, 1919, the agreement was reduced to writing and signed by the parties, and required the contractor to provide the labor and material for three new residence buildings to be erected on the lots according to certain specifications, on or before September 1, 1919. The agreement contained the provision:

"It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for the erection of said building according to specifications shall be $5,300, payable as follows:
"1st.  $1,000 as first payment on materials to be furnished.   Remainder to be paid through loan company.
"2nd.  $1,000 when house is 'under roof.'
"3rd.  $———— when rough plumbing and heating is done and house is plastered.
"Balance loan.  $———— when house is finished according to specifications."

The work was not completed September 1, 1919, and the contractor was urged, by the owner, after that date, to continue with the work, and lien claimant Ferrari commenced special mason work on September 20, 1919, and completed the same October 1, 1919.   The contractor abandoned the work on or about the 30th of October, 1919, and the owner boarded up the buildings and they remained that way until May, 1920, when defendants Dickson and McDermand purchased the premises from Mrs. R. May Tarsney.

Mr. Tarsney was not well at the time the contractor abandoned the work and he died March 28, 1920. February 26, 1920, Mr. Tarsney deeded the premises to a third party, who immediately deeded the same to Mr. and Mrs. Tarsney, constituting them tenants by entireties.

Defendants Dickson and McDermand started, on or

about May 15, 1920, to complete the buildings and finished them about September 10, 1920.

The original bill herein was filed on July 23, 1920, and defendants Dickson and McDermand, as subsequent purchasers, claimed recoupment for loss of rents occasioned by the failure of the contractor to complete the buildings by September 1, 1919.

It seems there was a hearing previous to the one in this record, and it evidently became apparent to the defendants Dickson and McDermand that their claim of recoupment would fail because of want of assignment of such claim from Mr. Tarsney's estate. Thereupon, on June 24, 1921, Mrs. Tarsney filed a petition in the probate court for the county of Wayne for administration of the estate of Andrew J. Tarsney, deceased. In the petition she alleged that Mr. Tarsney left a will: "which may be offered for probate," and that his estate consisted of "an unliquidated action for breach of building contract," and that R. May Tarsney, widow, and Jack Tarsney, a son 14 years of age, were the heirs at law of the deceased. The same day Mrs. Tarsney was appointed special administratrix of the estate, and immediately petitioned the probate court for an order directing her to sell, assign and transfer to defendants Dickson and McDermand the building contract entered into by Andrew J. Tarsney and all right of action for damages for breach thereof. The reason assigned by her for such order was that she had sold the premises to defendants Dickson and McDermand, and

"At the time of said sale, it was agreed that your petitioner should assign to said purchasers all right of action resulting from the breach of a certain building contract executed by the said deceased with the United Home Builders, a Michigan corporation, for the construction of certain buildings on said premises, which said contract had not been fulfilled by said contractor."

The same day, and upon such petition, the probate court, upon a finding that "it will be for the best interest of said estate to release said contract obligation," authorized the special administratrix to sell, assign and transfer to defendants Dickson and McDermand the interest of the estate in the building contract and all right of action for damages for breach thereof.

Mr. Tarsney never assigned to Mrs. Tarsney any right of action under the contract. The record discloses no further proceedings in the estate of Andrew J. Tarsney.

The trial judge found that the delay occasioned by boarding up the buildings in the fall of 1919, and leaving them until May, 1920, by reason of the sharp advance in price of building materials made the cost of finishing the buildings 40 per cent. higher than such cost would have been had the construction followed the abandonment by the contractor. The evidence amply supports this finding. The cost of completing the buildings must be determined as of the time their completion fell upon the owner, or within a reasonable period thereafter. Had the work of completion followed within a reasonable period after the contractor left, the cost thereof would have been at least 40 per cent. less than it was seven months later. The so-called peak of high prices of building material and labor was reached in February, 1920, and by waiting from October 30, 1919, to May, 1920, to even start to complete the buildings, bars the extra cost of construction from being set up against the liens.

The owner paid the contractor $1,000 fifty days before the contract was signed, and it is claimed by the lienors that the court improperly held the owner, and those claiming under him, protected by such payment. The burden of showing that such payment was distributed according to the statute among those

who might claim liens rested upon the owner or sub-
sequent purchasers. If $1,000 could be paid in ad-
vance and protect the owner, the whole contract price
could be paid and materialmen and laborers would
have no remedy. We have searched the record for
evidence tending to show what was done by the con-
tractor with this $1,000, and cannot find that it was
distributed among those who might claim liens.

Counsel for the present owners contends:

"This payment was specifically required to be made
by the contract, but was made before any labor or
materials were furnished upon the premises, and for
that reason is a protected payment, although no sworn
statement was received at the time. This is ob-
viously true because nothing could then be due or
owing to any laborers or materialmen under the con-
tract." Citing *Stevens* v. *Garland*, 198 Mich. 24;
*J. W. McCausey & Co.* v. *Gittleman*, 201 Mich. 8.

The cases cited do not support the broad rule con-
tended for. They are based upon the provision of
the lien law protecting incumbrances existing and of
record at the time material is furnished or labor
services rendered, and present the element of con-
structive notice, sufficient to put the subcontractors on
inquiry. A payment made to a contractor in advance,
except by recorded mortgage, controls the rights of
subsequent lienors only so far as such payment has
been distributed among the subcontractors, material-
men or laborers. The statute so provides (3 Comp.
Laws 1915, § 14796).

This court has pointed out the two methods of pay-
ment which may be made by the owner with safety,
and both are statutory (*Smalley* v. *Gearing*, 121 Mich.
190; *Stevens* v. *Garland, supra; Sandusky Grain Co.*
v. *Borden's Condensed Milk Co.*, 214 Mich. 306, 321).
This advance payment should not have been allowed
as against the liens. It is conceded that the second
payment of $1,000 was made without statutory affi-

davit and after work commenced, and was properly disallowed.    The third payment of $1,000 was made upon presentation of statutory affidavit by the contractor, on July 28, 1919, but it is claimed it was paid two days in advance of the expiration of the 30 days allowed by the statute to a lien claimant to give notice that he is furnishing material or labor and, therefore, should be disallowed.    The record does not disclose any notice given within the 30 days by any lien claimant.    We think the point without merit.    If notice had been given by a lien claimant within the two remaining days we would have a meritorious question to consider.    If the lienors did not see fit to invoke the provision of the statute by any notice at all, they cannot come in later and, upon what they might have done but did not do, have it determined that the owner was acting contrary to their rights in making such payment.    This payment was properly allowed.

The subsequent purchasers contend that the trial court was in error in holding the price to be paid by the owner under his contract for the three buildings was $15,900, and insist that the full amount the owner was required to pay was the sum of $3,000 in cash and such amount should be held the contract price.    The owner obligated himself to pay $3,000 in cash and to pledge his property for the purpose of paying $12,900 more.    He never gave the contractor power to pledge the property for a loan and obtained no loan himself.    The owner could not, and subsequent purchasers cannot, free the property of the liens by pointing to a provision in the contract requiring the pledging of the property by the owner to pay for the buildings, with no pledge or power to pledge ever given.    In the meantime the lien law has stepped in at the behest of materialmen and the property is made to pay for construction of the buildings, not by way of loan but by way of liens.

If the loan had been procured during the course of construction, or after completion and within the period allowed for liens, the owner would have had to comply with the lien law in paying, or permitting the money to be paid over to the contractor.

The learned circuit judge held the probate proceedings void and denied the claim of recoupment for rent on that ground. We do not find it necessary to pass upon the validity of the probate proceedings.

Under this record the subsequent purchasers, even if they held a valid assignment from the estate of Andrew J. Tarsney, deceased, could not recoup as against the lienors for loss of rents. Mr. Tarsney, in his lifetime, waived the time of completion of the contract by urging the contractor to continue after September 1st, and in permitting the work to continue. The record does not show any effort, on the part of Mr. Tarsney, to aid the contractor in obtaining a loan or any authority upon which the contractor might have obtained a loan. The contract required action by Mr. Tarsney in obtaining the loan.

The subsequent purchasers do not deny the delivery of the material, as claimed by plaintiff, and other lienors, but insist there is no showing of the use of all thereof in the construction of the houses. The circuit judge disallowed an item for lath delivered by plaintiff, but not used. We are persuaded that the material, as found by the trial judge, entered into the construction of the buildings.

The trial court found the reasonable cost to complete the work at the time of the abandonment by the contractor was the sum of $8,940.87, and he added to this sum the three payments of $1,000 each and the amount due lien claimants of $5,549.13, and found the total cost to the owner to amount to the sum of $17,490. From this amount the court deducted the $1,000 paid without a sworn statement and this left the total cost at $16,490, and decreed that:

"The contract price for the construction of the buildings upon the said premises, according to the contract, was fifteen thousand nine hundred ($15,900) dollars; that the *pro rata* amount due each lien claimant is determined by taking the amount paid by the owner under the lien statute, $2,000; together with the cost of completing the buildings, $8,940.87, and the outstanding liens, $5,549.13, totaling $16,490, then dividing this into the contract price, $15,900 equalling 96.42, which is the percentage each lien claimant is entitled to receive."

We have disallowed a further item of $1,000 and this removes the necessity of awarding the lienors a percentage of their claims, as it results in allowing their claims in full, with the exception of the defendants Hiram S. Barber and Ben Ferrari, who did not appeal, and as to them the decree below must stand. The amounts found due by the circuit judge to the several lien claimants are approved.

The decree entered in the circuit is modified to the extent of disallowing the $1,000 payment mentioned in this opinion, and with such modification, and the result thereof upon the rights of the appealing lien claimants, the decree is affirmed with single costs to be distributed among the several lienors appealing and against defendants Dickson and McDermand and the General Casualty & Surety Company.

The plaintiff, however, will not be permitted to tax costs for the pages in the brief containing the opinion of the court below and the decree entered, for such opinion and decree appear at length in the record and should not have been reprinted in the brief.

FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.    McDONALD, J., did not sit.